**F. GAROFALO ELECTRIC COMPANY, INC., Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY, Defendant.**

No. 90–CV–3102 (JRB).

United States District Court, E.D. New York.

July 8, 1992.

Steven G. Rubin, Mineola, N.Y. (Gordon P.R. Posner, of counsel), for plaintiff.

Stim & Warmuth, P.C., Huntington, N.Y. (Joseph D. Stim, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

This motion and cross-motion for summary judgment brought pursuant to Fed. R.Civ.P. 56 arises from disputed interpretations of two electrical installation contracts. The plaintiff F. Garofalo Electric Company, Inc. ("Garofalo") moves for summary judgment on the first cause of action. The defendant Hartford Insurance Company ("Hartford") cross-moves for summary judgment on the first cause of action, and moves for summary judgment on the second, fourth, and fifth causes of action.

■ Summary judgment is proper only when it appears plain from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–73 (2d Cir.1991). The function of a district court in a summary judgment motion is to determine whether there are any genuine issues for trial while resolving all ambiguities and doubtful inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. den.* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## FACTS

On a date prior to December 12, 1984, English Electric Corporation ("English") entered into a construction contract with New York City Transportation Authority ("NYCTA") to do electrical work at various NYCTA subway stations. On December 12, 1984, English entered into a subcontract with Federal Chandros, Incorporated ("Federal") for electrical work at several NYCTA subway locations. The Federal subcontract lists the unit quantities and price of each electrical component item to be installed at the various locations. On February 25, 1985, Federal, acting under its duty as a NYCTA subcontractor, entered into a surety agreement with Hartford. Hartford gave performance and payment bonds to English as obligee.

On or about August 22, 1986, Federal notified English that it defaulted on its subcontract and abandoned the job which, in turn, required Hartford to assume Federal's responsibilities. On December 12, 1986, Hartford entered into a contract with Garofalo ("Contract 241"). Contract 241 recites Garofalo's promise to complete the remaining work under the original Federal subcontract at prices set forth in an attachment called "Exhibit A." On the same day, the parties entered into a second contract ("Contract 259"). Garofalo filed suit, predicated on this Court's diversity subject matter jurisdiction, alleging non-payment of monies owed by Hartford under Contracts 241 and 259.

## DISCUSSION

The applicable New York law of contracts is not in dispute. "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms...." by a court. *W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 565

N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990). The contract must be "read as a whole to determine its purpose and intent." *Id.* The Court applies these well established principles of New York contract law to resolve the motion and cross-motions for summary judgment for each cause of action *seritiam:*

■ 1. *First Cause of Action:* Garofalo moves and Hartford cross-moves for summary judgment on the first cause of action, which is based on Paragraph 6 of Contract 241. Paragraph 6 sets forth the calculation of premium prices in the following manner:

> Upon receipt of the duly certified approval requisition, and within 30 days thereafter, Hartford will, for each separate item approved, compute adjusted compensation therefor by multiplying (1) the number of units of that item approved, by (2) a sum equal to the Garofalo price indicated in Exhibit A, minus Federal's price stated in the original subcontract. After totaling the results of all separate items covered in the requisition, Hartford will then pay Garofalo the total adjusted compensation for all items comprising the certified approved requisition, less retention in the same percentage provided in English's contract with the New York City Transit Authority. If the calculations indicate money owing from Garofalo to Hartford for an approved requisition, Hartford will be entitled to a credit for same against its subsequent obligations to Garofalo. PROVIDED, HOWEVER, that, once any given unit quantity exceeds, by more than 10%, the original Federal subcontract estimated units, Garofalo hereby agrees to accept, as full compensation, Federal's bid unit price, which sums are to be included and paid to Garofalo under its agreement with English, and no further sums will be due for said items from Hartford.

Neither party contends that Paragraph 6 is ambiguous.[1] Garofalo argues that Paragraph 6 entitles it to premiums based on the quantities of an approved item in its requisitions to English up to a maximum of 110% of the quantity originally estimated by Federal. Hartford presses that such an interpretation of Paragraph 6 does not take into account the unit quantities of each item installed by Federal before it defaulted. Hartford argues that Contract 241 incorporates by reference a number of documents, including the original Federal subcontract, Exhibit A, Federal Estimate # 13, dated July 21, 1986, and Federal Estimate # 14, dated August 13, 1986, which in various places indicate the unit quantities of items left to be installed after the Federal default and the premium unit prices agreed to by the parties. Hartford has paid premiums based on 110% of the original estimated quantities less amounts already installed by Federal on this basis.

Both parties point to Item 28A, No. 14 Single Conductor Wire, to illustrate the discrepancies in premium calculations under Paragraph 6. Federal's original estimated quantity for Item 28A was 29,200 units. Exhibit A states that Federal furnished 877.55 units of Item 28A before it defaulted. Under Garofalo's interpretation of Paragraph 6, it would be entitled to receive a premium price for up to 110% of 29,200 units, or 32,120 units. Under Hartford's interpretation of Paragraph 6, it would pay plaintiff a premium of up to 110% of 29,200 units less 877.55 units, or 31,242 units, in order to adjust for the amount previously installed by Federal.

The dispute turns on the meaning of the phrase "any given unit quantity" found in the last sentence of Paragraph 6. The phrase does not explicitly call for subtraction of quantities already installed by Federal. It also does not explicitly reference the quantities already installed by Federal as they appear in Exhibit A and in the

---

1. Both parties submitted parol evidence concerning the meaning of Paragraph 6 in their affidavits despite the absence of an allegation of ambiguity. Parol evidence is admissible only when a contract provision is ambiguous. "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."

*W.W.W. Assoc., Inc.,* 565 N.Y.S.2d at 443, 566 N.E.2d at 642. The Court, for reasons stated fully *infra,* finds no ambiguity in Paragraph 6. Since the parties have not raised the issue of ambiguity, and the Court finds that none exists, all parol evidence in the affidavits has been ignored.

estimates attached to Contract 241. The only specific reference in Paragraph 6 to Exhibit A concerns the Garofalo premium price. The phrase "any given unit quantity" cannot be deemed to incorporate Federal-adjusted quantities as they appear in Exhibit A or in the attached estimates without a similarly specific reference or identification. *See* 4 *Williston on Contracts* § 628 (3rd. ed. 1961); 17A C.J.S. *Contracts* § 299 (1963); *compare Lodges 743 and 1746, International Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 441 (2d Cir.1975), *cert. den. International Ass'n of Machinists & Aerospace Workers v. NLRB,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976), quoting *Guerini Stone Co. v. P.J. Carlin Constr. Co.,* 240 U.S. 264, 277, 36 S.Ct. 300, 306, 60 L.Ed. 636 (1915) ("a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified"). Thus, the phrase refers to the aggregate number of units installed by Garofalo after receiving certification and approval from English as described in the first sentence of Paragraph 6. Premium payments for these certified quantities are then limited to 110% of the original Federal subcontract estimated units.

Garofalo's interpretation of the phrase "any given unit quantity" in the last sentence of Paragraph 6 is consistent with the meaning of the phrase "number of units of that item approved" in the first sentence of Paragraph 6. Hartford does not dispute that the latter phrase refers to work done by Garofalo. Hartford's interpretation of Paragraph 6 means that the phrase "any given unit quantity" refers to work done by Garofalo and Federal for purposes of calculating the cut-off point for the premium, but the phrase "number of units of that item approved" refers only to work done by Garofalo for purposes of calculating the premium itself. Hartford's interpretation renders the two phrases inconsistent while it is clear that they both refer to the same thing, *i.e.* quantities certified and approved by English and installed by Garofalo.

Hartford incorrectly posits that Garofalo seeks "premium prices on units furnished by Federal" through its interpretation of Paragraph 6. Def.Mem.L. at 10. Garofalo is not entitled to receive payments of any kind for quantities installed by Federal. However, Garofalo is entitled to receive payments for work it performed after receiving a certified requisition from English. Garofalo sues only for premium payments on units it installed in the subways up to the 110% Federal subcontract estimated quantity limitation. While overruns occurred such that Garofalo installed quantities which, for some items, vastly exceeded the original Federal subcontract estimated units, every unit installed had been approved by English. Summary judgment must be granted in favor of Garofalo.

■ 2. *Second Cause of Action:* Hartford moves for summary judgment on the second cause of action, which is based on Paragraph 16 of Contract 241. Paragraph 16 acknowledges that "it is necessary to inspect the inventory and the work put in place by Federal" and then provides for inspectors from both sides to inspect Federal's work. Unacceptable work was to be designated as (a) unsatisfactory, or (b) "unable to be certified at this time." Unsatisfactory work was to be corrected at a price negotiated by both parties after submission by Garofalo of a proposal for correction. Uncertified work was to be inspected at a mutually agreeable later date. Paragraph 16 then states that,

[e]xcept as provided above, Garofalo agrees to accept the work put in place by Federal, as is, and further agrees that should any portion of the same not be accepted by Owner, that it will correct any deficiencies and make the work acceptable, at its own expense, and without any additional compensation therefor, except latent defects.

Garofalo claims that the following three items installed by Federal are latent defects excepted from its otherwise unqualified duty to inspect, designate, renegotiate and repair: [1] exposed electric cable near subway tracks at the West 72d Street station, [2] faulty conduit stubs located near a signal box near the West 53d Street station, and [3] failure to install cable supports every three feet at the West 53d Street station. Hartford moves for sum-

mary judgment by arguing that there is no genuine issue of fact that these three items are not latent defects as defined in Paragraph 16.

Hartford relies on the deposition of Mr. Arnold Cohen, the Garofalo's project engineer, to show that all three defective items were obvious, visible, and easily discoverable by Garofalo. Mr. Cohen stated that the exposed electrical conduit at the West 72d Street substation track was visible to him. Cohen Dep. at 32, 34, and 42. This conduit should have been laid several feet underneath track level, but instead had been placed at track level near water inverts. *Id.* Mr. Cohen also stated that the faulty conduit at the West 53d Street station signal box was visible to him. Cohen Dep. at 49. He further stated that cable steel supports for electrical cable hanging from the ceiling of the same location were missing. These cable supports were supposed to be placed approximately every three feet along a clearly visible steel structure which hangs from the station ceiling approximately 30 feet in the air. Cohen Dep. at 8 and 14.

Garofalo puts forth no facts disputing the open and obvious nature of these defects. Instead, Garofalo asserts that it was unreasonable to inspect all the areas of track where Federal had done work before taking over the subcontract. Paragraph 16 imposes a duty on Garofalo to inspect Federal's work which is not qualified by its cost or time constraints. Paragraph 16 specifically permitted Garofalo to designate any portion of Federal's work as "unable to be certified at this time" so that thorough inspections could occur at a convenient date. The only exemption in Paragraph 16 is for defects hidden or concealed from discovery after inspection and designation occurred. Garofalo's broad interpretation of the latent defects clause of Paragraph 16 would render meaningless the mechanism set forth through which inspections, designations, and price renegotiations were to be made. Garofalo cannot sustain a factual dispute under the latent defects exception, when properly construed, because the three defects in question are by their very nature open and obvious. Summary judgment must be granted to Hartford because of the absence of any evidence supporting Garofalo's claim that the defects alleged are latent.

■ 3. *Fourth Cause of Action:* The legal basis behind the fourth cause of action is not understood by the Court. Hartford surmises that the claim, which concerns the cost of supplying and installing 4288 feet of 2000 MCM cable, is also grounded on the latent defects provision of Paragraph 16. Garofalo asserts in its reply papers that the claim is based on Paragraph 6 as premiums owed for work done but not paid by Hartford due to a bookkeeping error. Pl.'s Opp.Aff. Paragraphs 9–19. However, Garofalo's interrogatory answers suggest that it relies on Paragraph 16 for recovery of the cost of the 2000 MCM Cable. Def.'s Aff. Paragraph 32; Pl.'s Ans.Supp.Inter. Paragraphs 16–19. The Court must deny summary judgment to Hartford on the fourth cause of action because of this vagueness and ambiguity. The Court hereby grants Garofalo fourteen days from the date of this order to amend its complaint pursuant to Fed. R.Civ.P. 15(b) for the purpose of clarifying the legal basis for this cause of action. If the complaint is not appropriately amended within such time, the Court will dismiss the cause of action.

■ 4. *Fifth Cause of Action:* Hartford moves for summary judgment on the fifth cause of action, which is based on Paragraph 12(b) of Contract 259. Paragraph 12(b) reads, in pertinent part,

[w]ith regard to Federal purchase order number 20195.... the parties agree that Hartford has entered into or will enter into, an agreement whereby it will pay $33,174.65 for materials presently due and owing. Garofalo agrees to take over and complete the said purchase order, and pay for same, according to the original terms of the purchase order, and without adjustment or credit to this agreement.

Garofalo seeks recovery for extra costs incurred in paying for purchase order 20195 due to an escalation clause in the purchase order agreement under which the price of the goods increased. Garofalo asserts that it did not know about the escala-

tion clause despite the fact that the preamble to Contract 259 states, "Garofalo has had the opportunity to examine the original subcontract and the other papers and documents, and is fully familiar with the same...." Hartford's argument that Paragraph 12(b) limits its liability to $33,174.65 for the purchase order is correct. Paragraph 12(b) unequivocally states that Garofalo will take over and complete purchase order 20195 without any subsequent adjustments. Summary judgment must be granted to Hartford for the fifth cause of action on the basis of the restrictions imposed by Paragraph 12(b).

## CONCLUSIONS

As stated above, [1] summary judgment on the first cause of action is granted in favor of Garofalo, [2] summary judgment is granted in favor of Hartford on the second and fifth causes of action, and [3] summary judgment is denied on the fourth cause of action on the condition that Garofalo amends its complaint within fourteen days of the date of this order.

SO ORDERED.