*159 OPINION OF THE COURT
Kaye, J.
In this action for specific performance of a contract to sell real property, the issue is whether an unambiguous reciprocal cancellation provision should be read in light of extrinsic evidence, as a contingency clause for the sole benefit of plaintiff purchaser, subject to its unilateral waiver. Apply *160 ing the principle that clear, complete writings should generally be enforced according to their terms, we reject plaintiffs reading of the contract and dismiss its complaint.
Defendants, owners of a two-acre parcel in Suffolk County, on October 16, 1986 contracted for the sale of the property to plaintiff, a real estate investor and developer. The purchase price was fixed at $750,000 — $25,000 payable on contract execution, $225,000 to be paid in cash on closing (to take place "on or about December 1, 1986”), and the $500,000 balance secured by a purchase-money mortgage payable two years later.
The parties signed a printed form Contract of Sale, supplemented by several of their own paragraphs. Two provisions of the contract have particular relevance to the present dispute —a reciprocal cancellation provision (para 31) and a merger clause (para 19). Paragraph 31, one of the provisions the parties added to the contract form, reads: "The parties acknowledge that Sellers have been served with process instituting an action concerned with the real property which is the subject of this agreement. In the event the closing of title is delayed by reason of such litigation it is agreed that closing of title will in a like manner be adjourned until after the conclusion of such litigation provided, in the event such litigation is not concluded, by or before 6-1-87 either party shall have the right to cancel this contract whereupon the down payment shall be returned and there shall be no further rights hereunder.” (Emphasis supplied.) Paragraph 19 is the form merger provision, reading: "All prior understandings and agreements between seller and purchaser are merged in this contract [and it] completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract.”
The Contract of Sale, in other paragraphs the parties added to the printed form, provided that the purchaser alone had the unconditional right to cancel the contract within 10 days of signing (para 32), and that the purchaser alone had the option to cancel if, at closing, the seller was unable to deliver building permits for 50 senior citizen housing units (para 29).
The contract in fact did not close on December 1, 1986, as originally contemplated. As June 1, 1987 neared, with the litigation still unresolved, plaintiff on May 13 wrote defendants that it was prepared to close and would appear for *161 closing on May 28; plaintiff also instituted the present action for specific performance. On June 2, 1987, defendants canceled the contract and returned the down payment, which plaintiff refused. Defendants thereafter sought summary judgment dismissing the specific performance action, on the ground that the contract gave them the absolute right to cancel.
Plaintiff’s claim to specific performance rests upon its recitation of how paragraph 31 originated. Those facts are set forth in the affidavit of plaintiff’s vice-president, submitted in opposition to defendants’ summary judgment motion.
As plaintiff explains, during contract negotiations it learned that, as a result of unrelated litigation against defendants, a lis pendens had been filed against the property. Although assured by defendants that the suit was meritless, plaintiff anticipated difficulty obtaining a construction loan (including title insurance for the loan) needed to implement its plans to build senior citizen housing units. According to the affidavit, it was therefore agreed that paragraph 31 would be added for plaintiff’s sole benefit, as contract vendee. As it developed, plaintiff’s fears proved groundless — the lis pendens did not impede its ability to secure construction financing. However, around March 1987, plaintiff claims it learned from the broker on the transaction that one of the defendants had told him they were doing nothing to defend the litigation, awaiting June 2, 1987 to cancel the contract and suggesting the broker might get a higher price.
Defendants made no response to these factual assertions. Rather, its summary judgment motion rested entirely on the language of the Contract of Sale, which it argued was, under the law, determinative of its right to cancel.
The trial court granted defendants’ motion and dismissed the complaint, holding that the agreement unambiguously conferred the right to cancel on defendants as well as plaintiff. The Appellate Division, however, reversed and, after searching the record and adopting the facts alleged by plaintiff in its affidavit, granted summary judgment to plaintiff directing specific performance of the contract. We now reverse and dismiss the complaint.
Critical to the success of plaintiff’s position is consideration of the extrinsic evidence that paragraph 31 was added to the contract solely for its benefit. The Appellate Division made clear that this evidence was at the heart of its decision: "review of the record reveals that under the circumstances of *162 this case the language of clause 31 was intended to protect the plaintiff from having to purchase the property burdened by a notice of pendency filed as a result of the underlying action which could prevent the plaintiff from obtaining clear title and would impair its ability to obtain subsequent construction financing.” (152 AD2d 333, 336.) In that a party for whose sole benefit a condition is included in a contract may waive the condition prior to expiration of the time period set forth in the contract and accept the subject property "as is” (see, e.g., Satterly v Plaisted, 52 AD2d 1074, affd 42 NY2d 933; Catholic Foreign Mission Socy. v Oussani, 215 NY 1, 8; Born v Schrenkeisen, 110 NY 55, 59), plaintiffs undisputed factual assertions —if material — would defeat defendants’ summary judgment motion.
We conclude, however, that the extrinsic evidence tendered by plaintiff is not material. In its reliance on extrinsic evidence to bring itself within the "party benefited” cases, plaintiff ignores a vital first step in the analysis: before looking to evidence of what was in the parties’ minds, a court must give due weight to what was in their contract.
A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing (see, e.g., Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256, 269-270; Judnick Realty Corp. v 32 W. 32nd St. Corp., 61 NY2d 819, 822; Long Is. R. R. Co. v Northville Indus. Corp., 41 NY2d 455; Oxford Commercial Corp. v Landau, 12 NY2d 362, 365). That rule imparts "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses * * * infirmity of memory * * * [and] the fear that the jury will improperly evaluate the extrinsic evidence.” (Fisch, New York Evidence § 42, at 22 [2d ed].) Such considerations are all the more compelling in the context of real property transactions, where commercial certainty is a paramount concern.
Whether or not a writing is ambiguous is a question of law to be resolved by the courts (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 191). In the present case, the contract, read as a whole to determine its purpose and intent (see, e.g., Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342, 347), *163 plainly manifests the intention that defendants, as well as plaintiff, should have the right to cancel after June 1, 1987 if the litigation had not concluded by that date; and it further plainly manifests the intention that all prior understandings be merged into the contract, which expresses the parties’ full agreement (see, 3 Corbin, Contracts § 578, at 402-403). Moreover, the face of the contract reveals a "logical reason” (152 AD2d, at 341) for the explicit provision that the cancellation right contained in paragraph 31 should run to the seller as well as the purchaser. A seller taking back a purchase-money mortgage for two thirds of the purchase price might well wish to reserve its option to sell the property for cash on an "as is” basis if third-party litigation affecting the property remained unresolved past a certain date.
Thus, we conclude there is no ambiguity as to the cancellation clause in issue, read in the context of the entire agreement, and that it confers a reciprocal right on both parties to the contract.
The question next raised is whether extrinsic evidence should be considered in order to create an ambiguity in the agreement. That question must be answered in the negative. It is well settled that "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.” (Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 379; see also, Chimart Assocs. v Paul, 66 NY2d 570, 573.)
Plaintiff’s rejoinder — that defendants indeed had the specified absolute right to cancel the contract, but it was subject to plaintiff’s absolute prior right of waiver — suffers from a logical inconsistency that is evident in a mere statement of the argument. But there is an even greater problem. Here, sophisticated businessmen reduced their negotiations to a clear, complete writing. In the paragraphs immediately surrounding paragraph 31, they expressly bestowed certain options on the purchaser alone, but in paragraph 31 they chose otherwise, explicitly allowing both buyer and seller to cancel in the event the litigation was unresolved by June 1, 1987. By ignoring the plain language of the contract, plaintiff effectively rewrites the bargain that was struck. An analysis that begins with consideration of extrinsic evidence of what the parties meant, instead of looking first to what they said and reaching extrinsic evidence only when required to do so because of some identified ambiguity, unnecessarily denigrates the contract and unsettles the law.
*164 Finally, plaintiff’s conclusory assertion of bad faith is supported only by its vice-president’s statement that one of the defendants told the broker on the transaction, who then told him, that defendants were doing nothing to defend the action, waiting for June 2 to cancel, and suggesting that the broker might resell the property at a higher price. Where the moving party "has demonstrated its entitlement to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure so to do.” (Zuckerman v City of New York, 49 NY2d 557, 560.) Even viewing the burden of a summary judgment opponent more generously than that of the summary judgment proponent, plaintiff fails to raise a triable issue of fact (see, Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1068).
Accordingly, the Appellate Division order should be reversed, with costs, defendants’ motion for summary judgment granted, and the complaint dismissed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.