■ BROCKWAY-SMITH COMPANY, Respondent, v DONALD C. GREENE, Doing Business as DCG DEVELOPMENT COMPANY, Appellant. (Action No. 1.) DONALD C. GREENE, Doing Business as DCG DEVELOPMENT COMPANY, Appellant, v BROCKWAY-SMITH COMPANY et al., Respondents. (Action No. 2.)—Weiss, J.

On March 18, 1988, Brockway-Smith Company (hereinafter Brockway) contracted to purchase 15 acres of land in the Town of Clifton Park, Saratoga County, from DCG Development Company (hereinafter DCG),[1] which parcel was part of a larger plot DCG proposed to subdivide into an industrial park. The contract contained a number of conditions and contingencies, including a requirement that by August 31, 1988 DCG would have procured all government approvals for its subdivision and a permit for a curb cut on Ushers Road. The agreement was also contingent upon Brockway obtaining all governmental approvals required to construct a manufacturing and distribution facility for its products by the same date. Thereafter, Brockway concluded that it could not procure a building permit by the August 31, 1988 contingency date and notified DCG by letter dated August 26, 1988 that it withdrew from the contract and requested the return of all deposits.

Brockway then commenced action No. 1 against DCG seeking, *inter alia,* recovery of its deposits. DCG countered with action No. 2 against Brockway and Barry Bette & Led Duke, Inc. (hereinafter BBL), a builder engaged by Brockway to design and build the Clifton Park facility. DCG's suit alleged breach of contract by Brockway and tortious interference with the contract by BBL. Brockway moved for partial summary judgment on its complaint and dismissal of the DCG complaint. Both DCG and BBL cross-moved for summary judgment. Supreme Court found that DCG was responsible for the delay in obtaining approval of its subdivision which made it impossible for Brockway to timely procure a building permit, and concluded that the withdrawal from the contract by

---

1. Donald C. Greene does business under the name of DCG. All references to DCG refer to Greene or Greene doing business as DCG.

Brockway was proper and that there had been no tortious interference by BBL. DCG has appealed from the order and judgment granting partial summary judgment to Brockway in action No. 1 and dismissing DCG's complaint in action No. 2.

We affirm. Brockway was required to proceed in good faith to receive a site plan approval and a building permit prior to August 31, 1988 (see, Savino v DeLeyer, 160 AD2d 989, 990; see also, Goewey v Delta D & I Corp., 175 AD2d 299). On May 9, 1988, Brockway presented its conceptual site plan to the Town of Clifton Park Planning Board, which determined that it would not consider the application until the DCG subdivision proposal had been approved. DCG was fully aware that final approval of its subdivision was a precondition to a review of the Brockway site plan by the Planning Board. Moreover, DCG failed to timely furnish Brockway with certain information about its subdivision which was applicable to the parcel to be purchased by Brockway, such as the water distribution system, sanitary sewer system, topographic information and a grading plan.

DCG did not submit its subdivision for approval until the June 27, 1988 meeting of the Planning Board. The application was ultimately approved on August 8, 1988.[2] Insofar as there were no additional meetings of the Planning Board scheduled until September 1988, however, Brockway was effectively precluded, through no fault of its own, from procuring its site plan and building permit approvals prior to the August 31, 1988 deadline. Moreover, while DCG's subdivision was purportedly approved on August 8, 1988, the original final subdivision plat was never signed by the Planning Board and was never filed with the County Clerk, both of which were required by the Town's subdivision regulations, thereby precluding the issuance of a building permit to Brockway. Thus, pursuant to the terms of the contingency clause Brockway was entitled to terminate the contract.

Brockway had been concerned both with the continuing delay by DCG and with the necessity to ensure that it would have business premises available to replace its existing plant, which was subject to an expiring lease. On June 30, 1988, Brockway sent a letter to DCG expressing concern over the delay in obtaining the required approvals by the August 31,

2. Brockway did not attend the August 8, 1988 Planning Board meeting or present its application for site plan approval because it had been told by Town officials that the DCG application was not on the agenda inasmuch as more information was needed.

1988 contingency date. DCG did not respond until August 29, 1988 after Brockway had already terminated the contract. Brockway had proceeded diligently with its contract obligations and prompted DCG to act similarly, and when faced with a growing likelihood that the project deadline would not be met, prudently prepared a fallback position with another building site. DCG contends that Brockway's activities pertaining to the secondary site are suggestive of bad faith in the performance of the subject contract and raise factual issues as to whether Brockway breached the contract. We find this characterization of Brockway's motives to be wholly speculative and without foundation in fact, and thus insufficient to defeat the motion for summary judgment (see, Lindenbaum v Royco Prop. Corp., 165 AD2d 254, 261; see also, W.W.W. Assocs. v Giancontieri, 77 NY2d 157, 164), and unrelated to Brockway's inability to obtain governmental approvals for construction prior to August 31, 1988 (see, Stendig, Inc. v Thom Rock Realty Co., 163 AD2d 46). DCG could not insist upon Brockway's performance of a condition precedent when its own nonperformance of contract obligations prevented Brockway from procuring the necessary approvals (see, Cutler v Konover, 81 AD2d 571, affd 55 NY2d 891). Brockway was entitled to rely upon the plain language of the contract to legitimately withdraw from the contract and, absent a breach on its part, was entitled to the return of the deposit.

Finally, since the termination was not improper, DCG's claim against BBL for tortious interference with the contract must necessarily fail.

Levine, Mercure, Mahoney and Harvey, JJ., concur. Ordered that the order and judgment are affirmed, with costs.