■ In the Matter of CHARLTON AMES, as Executor of ISABEL H. AULT, Deceased. DOROTHY NOBLE, Appellant; LEE AULT, Appellant. Guardian ad Litem, Respondent. [615 NYS2d 682] — Order, Surrogate's Court, New York County (Renee Roth, S.), entered on or about March 16, 1993 which, *inter alia,* granted the guardian ad litem's motion for summary judgment and determined that respondent-cross-appellant Lee Ault possessed a contingent remainder interest in two certain paintings, subject to Mr. Ault's limited testamentary power to appoint the paintings to or among any of his descendants as he may select, unanimously affirmed, without costs.

Lee A. Ault and Isabel Henry Ault were married in 1958 and divorced in October 1977. Although they had no children together, each had two children from prior marriages, Mr. Ault having two children (respondent-appellant Dorothy Noble and Lee A. Ault, III), seven grandchildren and a number of great grandchildren.

Prior to their divorce, in July 1977, the Aults entered into a separation agreement (the "Agreement") which was subsequently incorporated into their divorce judgment. The Agreement provides, in pertinent part: "As set forth in Schedule A the *Husband shall retain ownership of the following two paintings:*
Braque—'The Coffee Mill'
Leger—'Les Deux Pecheurs'
Notwithstanding Husband's ownership, Husband agrees that the *Wife shall have possession and full control of said two paintings during her life.* The Wife may keep said two paintings in any residence (wherever located) that she may from time to time maintain. The Husband agrees to keep said two paintings insured to the extent that he deems appropriate, and the Husband agrees that neither the Wife nor the estate of the Wife shall have any liability or responsibility to the Husband for loss, injury, or damage to either or both of said paintings under any circumstances whatsoever, except for intentional damage or destruction by the Wife. *The Husband agrees that upon his death he will bequeath said two paintings, subject to the life interest in the Wife, to descendants of the Husband.*" (Emphasis added.)

The two paintings referenced above, which are the subject

of this proceeding (the "Paintings"), have a value of approximately $2,000,000.

Isabel Ault died on November 7, 1989 and, thereafter, Lee Ault requested that the Executors of Ms. Ault's estate return the Paintings to him. Mr. Ault apparently believed that because his former wife predeceased him, he was entitled to possession as well as ownership of the Paintings. Ms. Ault's will, however, contained the following instruction:

"THIRD: (A) Subject to the provisions of Subdivision (B) of this Article, if my former husband Lee A. Ault survives me, I direct my executors to deliver to him the oil painting by Leger entitled 'Les Deux Pecheurs' and the oil painting by Braque entitled 'The Coffee Mill.' If Lee A. Ault does not survive me, I direct my executors to deliver such property to such of his descendants as he may have directed by Will, or failing such direction, to such of his children, LEE A. AULT and DOROTHY NOBLE, as survives me, to be divided between them as my executors determine in their absolute discretion.

"(B) I direct my executors, prior to their delivering to Lee A. Ault the property referred to in Subdivision (A) of this Article, to obtain such assurances as they in their absolute discretion deem appropriate, that the provisions with respect to such property contained in our agreement dated July 29, 1977 will be followed."

After Mr. Ault refused to provide written assurances that he would bequeath the Paintings to his descendants, contending that the terms of the Agreement no longer applied, the Executors of Ms. Ault's estate petitioned the Surrogate's Court for direction with respect to the proper disposition of the Paintings. Subsequent to the appointment of a guardian ad litem to represent Mr. Ault's minor grandchildren and great grandchildren, the parties moved and cross-moved for summary judgment. The Surrogate's Court granted the guardian ad litem's motion for summary judgment and held that Mr. Ault possessed a contingent remainder interest in the Paintings. We now affirm.

Initially, we reject Mrs. Noble's argument that the Agreement, and its terms, specifically the definition of "descendants", should be governed by the EPTL. Mrs. Noble contends that descendants, as set forth in the EPTL, would refer to her and her brother only.

The Agreement in question is a separation agreement that was incorporated into the Aults' divorce and is not a testamentary document. Therefore the term "descendants" as con-

tained in the Agreement should be given a general interpretation rather than a technical definition under the EPTL. It is Mr. Ault's will, not the Agreement, that effectuates the eventual testamentary disposition of the Paintings. In addition, the available extrinsic evidence, which may properly be considered with regard to the parties' intent because the Agreement is silent as to the definition of "descendants" (cf., Teitelbaum Holdings v Gold, 48 NY2d 51, 56), contradicts Mrs. Noble's position in that both of the Aults' wills indicate that neither believed the term "descendants" to be limited by the definition set forth in the EPTL (EPTL 1-2.10).

Mrs. Noble's contention that Mr. Ault was intended to have no more than a life interest in the Paintings is contradicted by the explicit terms of the Agreement which provide that "Husband [Ault] shall retain ownership" of the Paintings. The only limitation is that he agreed to bequeath them, upon his death, to his descendants.

Mr. Ault's position that the parties' intent with regard to his interest in the Paintings cannot be clearly gleaned from the four corners of the Agreement is equally unpersuasive. The Agreement distinctly provides: "The Husband agrees that upon his death he will bequeath said two paintings, subject to the life interest in the Wife, to descendants of the Husband."

It is well-settled law that absent ambiguity, and none exists here, the interpretation of a contract is a question of law to be resolved by the court (see, W.W.W. Assocs. v Giancontieri, 77 NY2d 157; Clinton Capital Corp. v Safety Harbor Spa Assocs. Ltd. Partnership, 162 AD2d 114). Further, evidence outside the four corners of the Agreement as to what was really intended is generally inadmissible to vary the terms of that Agreement (see, W.W.W. Assocs. v Giancontieri, supra, at 162; Mercury Bay Boating Club v San Diego Yacht Club, 76 NY2d 256).

The above quoted provision is crystal clear with regard to what and how Mr. Ault was to dispose of the Paintings. We, therefore, reject Mr. Ault's attempt to create an issue of fact by reference to an affirmation from the attorney who negotiated the settlement agreement as well as other extrinsic documents.

We have considered the parties' remaining arguments and find them to be without merit. Concur—Murphy, P. J., Rosenberger, Kupferman, Ross and Tom, JJ.