89 F.3d 826
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
HAMILTON BEACH/PROCTOR-SILEX, INC., Plaintiff-Appellee,
v.
Eyal LIOR and Sharon Lior, Defendants,
H.B.I., Inc. and Stuart Leventhal, Defendants-Appellants.
 No. 95-7313.
 United States Court of Appeals, Second Circuit.
 Nov. 29, 1995.
 
 Appeal from the United States District Court for the Southern District of New York (Martin, Judge).
 APPEARING FOR APPELLANT: JAY GURFEIN, Gurfein & Graubard, New York, NY.
 APPEARING FOR APPELLEE: THERESA M. GILLIS, Jones, Day, Reavis & Pogue, New York, NY.
 S.D.N.Y.
 AFFIRMED.
 Before WINTER, JACOBS and LEVAL, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Defendants H.B.I., Inc. and Leventhal appeal from summary judgment dismissing their counterclaim against plaintiff Hamilton Beach/Proctor Silex, Inc. alleging wrongful termination of a trademark licensing agreement. We affirm the grant of summary judgment but for reasons different from those of the district court.
 
 
 4
 This litigation involves two licensing agreements entered into by Hamilton Beach, Inc. ("Hamilton Beach"), now known as plaintiff Hamilton Beach/Proctor Silex, Inc.[1] Only one of these agreements is directly at issue in this appeal. That contract, which was entered into on March 1, 1989, granted an exclusive license to BHC Trading Co., Inc. ("BHC"), whereby BHC could use Hamilton Beach's trademark in specified territory and with respect to specified types of consumer products (the "BHC Agreement").
 
 
 5
 On February 7, 1990, Hamilton Beach entered into a second, similar agreement with H.B.I., Inc. On April 1, 1991, Hamilton Beach sent letters to both its licensees terminating the agreements.
 
 
 6
 On June 25, 1991, Hamilton Beach filed suit, alleging breach of the H.B.I. contract, and naming as defendants H.B.I. and its principals and guarantors, including Stuart Leventhal. In their answer, H.B.I. and Leventhal asserted a counterclaim on behalf of BHC for wrongful termination of the BHC Agreement.[2] The district court's order of summary judgment dismissing that counterclaim--on the ground that Hamilton Beach was within its rights to terminate the BHC agreement--is the sole issue on this appeal.
 
 
 7
 Pursuant to section 20 of the BHC Agreement, New York law applies.
 
 
 8
 In its letter to BHC, Hamilton Beach declared that it was terminating the BHC Agreement "as to all Licensed Products," and that it was doing so pursuant to "[i]nter alia, [section] 15(b) of the [BHC] Agreement ..." Section 15(b) permits Hamilton Beach to terminate the BHC Agreement as to a particular "Licensed Product" upon sixty days notice, if that Licensed Product fails to generate specified minimum royalties under the BHC Agreement. The district court, relying upon the qualifier "[i]nter alia," held that Hamilton Beach had the right to terminate the BHC Agreement under section 15(a ), which permits Hamilton Beach to terminate if BHC fails to pay royalties that are "due." H.B.I. and Leventhal contend (1) that Hamilton Beach could not terminate the entire BHC Agreement under section 15(b), because most of the products as to which the agreement confers rights on HBC are not "Licensed Products" within the meaning of section 15(b); and (2) that, contrary to the district court's reasoning, Hamilton Beach could not have terminated under section 15(a), even if that provision was comprehended by the term "[i]nter alia," because termination under section 15(a) cannot occur until fifteen days after proper notice of a deficiency, and because Hamilton Beach had sent no such notice.
 
 
 9
 We agree with defendants that Hamilton Beach had no right to terminate the contract under section 15(a), and that the district court therefore erred. However, we conclude that that termination was nevertheless permissible under section 15(b), the provision expressly cited in the letter of termination. Section 15(b) provides:
 
 
 10
 [T]his Agreement may be terminated: (b) By Licensor with respect to any Licensed Product at any time upon sixty (60) days written notice two (2) years from the date any Product (including the initially licensed products) is licensed hereunder, if, during the preceding calendar year, licensor's royalty income, exclusive of the License Fee contained in Paragraph 6(a), from any Licensed product is less than Ten Thousand Dollars ($10,000) ....
 
 
 11
 Section 15(b) thus empowers Hamilton Beach to cancel the license with respect to a particular "Licensed Product," if, after two years, the BHC Agreement was insufficiently profitable in respect of that license. Section 1(d) defines a "Licensed Product" as a 220 volt Product bearing Hamilton Beach's trademark, and it references Schedule A. Under section 1(c), a "Product" is a 220 volt household appliance listed in Schedule A, plus "such other household electrical appliances as Hamilton Beach may hereafter agree to license...." Schedule A consists of the heading "Licensed Products" atop a list of 16 products. As of the date that Hamilton Beach gave notice terminating the BHC Agreement, BHC had obtained approval from Hamilton Beach (pursuant to the conditions of section 5) to manufacture and sell two of those listed products with the Hamilton Beach trademark: the microwave oven and the meat grinder.
 
 
 12
 H.B.I. and Leventhal contend that Hamilton Beach's letter could not have terminated the entire licensing arrangement under section 15(b), because the microwave oven and the meat grinder are the only products listed in Schedule A that can be deemed Licensed Products, thus leaving the contract in force with respect to the remaining fourteen Products. The best argument for the licensee is (i) that BHC was barred (by section 5(a)) from selling any "Licensed Product" before Hamilton Beach had inspected production prototypes and advertising materials; (ii) that the only two "Licensed Products" subject to cancellation under section 15(a) were the microwave oven and the meat-grinder, the two products that Hamilton Beach had approved for marketing by BHC; and (iii) that the other fourteen items in Schedule A are Products, but not Licensed Products subject to license termination under section 15(a). Ultimately, this reading of the contract is untenable.
 
 
 13
 First, reading together section 1(a), (c), and (d) and Schedule A, the plain meaning of "Licensed Product" is a household electrical appliance that bears the trade name and trademark "Hamilton Beach," and that is named in Schedule A (or in a subsequent writing by Hamilton Beach). Under that definition, if BHC had constructed a rice cooker (which is an item in Schedule A) and affixed the trademark "Hamilton Beach," the appliance would be a Licensed Product. If HBC marketed that appliance without the required prior approval of Hamilton Beach, BHC would have been in breach of section 5(a) of the BHC Agreement, but that breach would not change the fact that the appliance would still be a Licensed Product definitionally. As Hamilton Beach points out, section 2(a)(ii) provides that "the Products licensed initially hereunder are set forth in Schedule A," and Schedule A lists sixteen products altogether. Moreover, if a particular appliance were not a Licensed Product until after it was approved by Hamilton Beach, then section 5(a)--which sets forth BHC's obligations with respect to "Licensed Products" prior to approval (including steps aimed at getting approval)--would be meaningless.
 
 
 14
 Since the term "Licensed Products" is unambiguous in the BHC Agreement, the parol evidence rule defeats the attempt by H.B.I. and Leventhal to offer extrinsic evidence of a different meaning. W.W.W. Assocs., Inc. v. Giancontieri, 565 N.Y.S.2d 440, 443 (N.Y.1990).
 
 
 15
 We conclude therefore that all sixteen items in Schedule A are Licensed Products, and that Hamilton Beach therefore could terminate the BHC Agreement as to any or all of the Licensed Products under section 15(b), if the royalty income from that Licensed Product (excluding the License Fee) was less than $10,000 during the preceding calendar year. It is undisputed that fourteen of the products listed in Schedule A generated no royalty income whatsoever; Hamilton Beach was therefore free to terminate with respect to these Licensed Products. As to the microwave oven and the meat grinder, there has been no showing that BHC paid any royalties to Hamilton Beach. The record shows that some sales of these products were made in 1989. But the BHC Agreement was terminated in 1991, and thus the only relevant sales for determining whether termination was proper under section 15(b) are sales for the year 1990. Since H.B.I. and Leventhal confirmed at oral argument that sufficient royalties were not paid, Hamilton Beach was free under section 15(b) to terminate the BHC Agreement entirely, as it did, and we affirm the grant of summary judgment to Hamilton Beach on that basis.
 
 
 
 [1]
 Since the distinction between these entities is irrelevant for purposes of this opinion, both Hamilton Beach and Hamilton Beach/Proctor Silex, Inc. will be referred to as "Hamilton Beach."
 
 
 [2]
 BHC has never been a party to this action. Throughout this litigation, plaintiff has challenged H.B.I. and Leventhal's standing to assert BHC's claim. (The Liors are not parties to this appeal.) The district court considered the issue moot, since H.B.I. eventually acquired all of BHC's stock, and the BHC Agreement permits assignments to successor corporations