127 F.3d 1106
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OSITIVE COMMUNICATIONS, INC., a California corporation,
Plaintiffcounter-defendant-Appellee,
v.
LEPERCQ, DE NEUFLIZE & CO., INC.,
Defendant-counter-plaintiff-Appellant.
 No. 96-16965.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 1997.
Decided October 14, 1997.
 
 Appeal from the United States District Court for the Northern District of California, Samuel Conti, District Judge, Presiding; No. CV-95-02463-SC.
 Before: HUG, Chief Judge, WALLACE and HALL, Circuit Judges.
 
 MEMORANDUM
 
 1
 Lepercq, de Neuflize & Co. (Lepercq) appeals from the denial of its motion for summary judgment and the entry of summary judgment in favor of Positive Communications, Inc. (Positive). The district court had jurisdiction pursuant to 28 U.S.C. § 1332. Lepercq timely appealed a final judgment, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a summary judgment or its denial de novo. Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1047 (9th Cir.1995), and we affirm.
 
 
 2
 Lepercq contends that it is owed a merger and acquisition fee (M & A fee) for the merger of Paging Services, Inc. (PSI) and Positive pursuant to a contract between PSI and Charterhouse (Lepercq's assignor). PSI owed Charterhouse the M & A fee "in the event of an acquisition by, or acquisition, sale, sale of assets or merger involving ... PSI ... with respect to a counterparty contacted by Charterhouse during the term." (Emphasis added.) This appeal is primarily about the meaning of the two emphasized words.
 
 
 3
 Charterhouse did have two brief contacts with Positive, which Lepercq asserts are sufficient because they were substantive contacts between Charterhouse and the merger counterparty. When interpreting a contact under New York law, "the entire contract must be considered so as to give each part meaning." Brooke Group Ltd. v. JCH Syndicate 488, 663 N.E.2d 635, 637 (N.Y.1996). The word "by" must be given meaning. It means "[t]hrough the means, act, agency, or instrumentality of." Black's Law Dictionary 201 (6th ed.1990). Positive was not contacted "[t]hrough the means, act, agency, or instrumentality of" Charterhouse.
 
 
 4
 Lepercq argues that the word "by" has meaning in that it puts the verb "contact" into the passive voice. Even if this were correct, which we do not decide, Charterhouse would still be required to contact the counterparty, not just be in contact with the counterparty. Even assuming Lepercq's assertion that the lunch meeting was used by PSI as part of its "game plan of negotiating with Positive," Lepercq cannot show that Charterhouse contacted Positive. The contract does not provide for an M & A fee to Charterhouse if it were unwittingly used in merger negotiations; the M & A fee is only to be paid if PSI merged with "a counterparty contacted by Charterhouse." This was a freely negotiated contract. We will not rewrite the terms of the contract to expand the range of situations in which Charterhouse would earn an M & A fee.
 
 
 5
 The contract "read as a whole to determine its purpose and intent," W.W.W. Associates, Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y.1990), also reinforces the interpretation that "contact by" required the instrumentality of Charterhouse. Charterhouse was to receive an initial financial advisory fee and a potential financing fee and a potential M & A fee. A list of some of the financial advisory services for which Charterhouse was to receive these fees includes two activities that relate to a merger counterparty: "[a]ssisting in finding and introducing Transaction counterparties to PSI with respect to specific possible Transactions" and "[a]ssisting in negotiations relating to the Transaction." These descriptions of active contacting further reinforce the plain language of the M & A fee term.
 
 
 6
 Although both parties attempt to bring in evidence extrinsic to the contract itself, the court should "reach[ ] extrinsic evidence only when required to do so because of some identified ambiguity." Id. at 643. There is no ambiguity in this contract, and we can resolve the case based on its terms. Nor will we entertain evidence "in order to create an ambiguity in this agreement." Id. at 642.
 
 
 7
 We also deny Positive's motion to strike factual statements from Lepercq's opening brief.
 
 
 8
 AFFIRMED.