Matter of Wells Fargo Bank v Aegon USA Inv. Mgt., LLC (2021 NY Slip Op 04740)





Matter of Wells Fargo Bank v Aegon USA Inv. Mgt., LLC


2021 NY Slip Op 04740


Decided on August 19, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 19, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Barbara R. Kapnick Angela M. Mazzarelli Jeffrey K. Oing


Motion No. 00975, 00123 Index No. 657387/17 Appeal No. 14004 Case No. 2020-02716 

[*1]In the Matter of Wells Fargo Bank et al., Petitioners,
v
Aegon USA Investment Management, LLC, et al., Respondents-Appellants, Nover Ventures LLC, et al., Respondents-Respondents. Solula LLC, Amicus Curiae.



Respondents appeal from the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered February 13, 2020, which, insofar as appealed from as limited by the briefs, upon the petition brought pursuant to CPLR article 77 for judicial instructions as to the administration and distribution of a settlement payment, held that (1) the settlement payment should be made using the "subsequent recovery write-up instructions" in the associated pooling and servicing agreements (PSAs), unless the relevant PSA is silent as to the write-up mechanics, in which case the "Settlement Agreement write-up instruction" of Section 3.06(b) should be applied as a "gap filler"; (2) the trustees should not write up the "certificate principal balance" of senior certificates in connection with the Settlement Payment in trusts where the PSA write-up instructions only address a write-up of subordinated certificates; (3) the definition of certificate principal balance in the HBK Trust PSAs requires the application of the write-up-first method; (4) the zero balance classes may be written up for the subsequent recovery of the settlement share, and investors in those classes may receive distributions of that amount; and (5) PSA provisions do not apply to grant the Ambac Assurance Corporation a priority right to receive subsequent recoveries obtained by the 2006 Trusts.




Warner Partners, P.C., New York (Kenneth E. Warner of counsel), and Gibbs & Bruns LLP, Houston, TX (David M. Sheeren of the bar of the State of Texas, admitted pro hac vice of counsel) for AEGON USA Investment Management, LLC, BlackRock Financial Management, Inc., Cascade Investment, LLC, Federal Home Loan Bank of Atlanta, Federal Home Loan Mortgage Corp., Federal National Mortgage Association, Goldman Sachs Asset Mgmt L.P., Voya Investment Mgmt LLC, Invesco Advisers, Inc., Kore Advisors, L.P., Metropolitan Life Ins. Co., Pacific Investment Mgmt Company LLC, Teachers Ins. and Annuity Assoc. of America, TCW Group, Inc., Thrivent Financial for Lutherans and Western Asset Mgmt. Co. (the "Institutional Investors"), appellants.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kevin S. Reed of counsel), for American General Life Insurance Company, American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., The United States Life Insurance Company in the City of New York and The Variable Annuity Life Insurance Company (the "AIG Parties"), appellants
Bailey Duquette P.C., New York (David I. Greenberger of counsel), and Perry Johnson Anderson Miller & Moskowitz LLP, Santa Rosa, CA (Isaac M. Gradman of the bar of the State of California, admitted pro hac vice of counsel), for DW Partners LP and Ellington Management Group, L.L.C. (the "DW/Ellington Parties"), appellants.
Schindler Cohen & Hochman LLP, New York (Jonathan L. Hochman and Anna Vinogradov of counsel), and Kramer Levin Naftalis & Frankel LLP, New York (Philip Bentley and Andrew Pollack of counsel), for Tilden Park Investment Master Fund LP, Tilden Park Management I LLC, and Tilden Park Capital Management LP (the "Tilden Park Parties"), appellants.
Patterson Belknap Webb & Tyler LLP, New York (Henry J. Ricardo of counsel), for Ambac Assurance Corporation, appellant.
Axinn, Veltrop & Harkrider LLP, New York (Felix J. Gilman and Donald W. Hawthorne of counsel), for Poetic Holdings VI LLC, Poetic Holdings VII LLC, and Prophet Mortgage Opportunities LP (the "Prophet and Poetic Parties"), appellants.
Perkins Coie LLP, New York (Martin Gilmore and Sean Connery of counsel), for U.S. Bank N.A., solely in its capacity as NIM Trustee for the Poetic and Prophet Trusts and as NIM Trustee for the HBK Trusts, appellant.
Kobre & Kim LLP, New York (Danielle L. Rose, Zachary D. Rosenbaum and Darryl G. Stein of counsel), for U.S. Bank N.A., solely in its capacity as NIM Trustee for the HBK Trusts (the "HBK Parties"), appellant.
McKool Smith, P.C., New York (Robert W. Scheef, Gayle R. Klein, David I. Schiefelbein and Steven R. Fisher of counsel), for Nover Ventures LLC, respondent.
Goulston & Storrs PC, New York (Charles R. Jacob III of counsel), and Perry, Johnson, Anderson, Miller & Moskowitz LLP, Santa Rosa, CA (Isaac M. Gradman of the bar of the State of California, Edward P. Allinson, of the bar of the State of California, admitted pro hac vice of counsel and Kristin A. Mattiske-Nicholls), for D.E. Shaw Refraction Portfolios, L.L.C. ("D.E. Shaw"), respondent.
Dechert LLP, New York (Mauricio A. EspaÑa of counsel), for Strategos Capital Management, LLC, respondent.
Patterson Belknap Webb & Tyler LLP, New York (Diana M. Conner and Peter W. Tomlinson of counsel), for Olifant Fund, Ltd., FFI Fund Ltd. and FYI Ltd. (the "Olifant Funds"), respondents.
Davis Polk & Wardwell LLP, New York (Joshua S. Sturm and Marie Killmond of counsel), for GMO Opportunistic Fund and GMO Global Real Return (the "GMO Parties"), respondents.
Kleinberg, Kaplan, Wolff & Cohen, P.C., New York (Maya D. Cater of counsel), for amicus curiae.



MANZANET-DANIELS, J.P. 


Respondents appeal from the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered February 13, 2020, which, insofar as appealed from as limited by the briefs, upon the petition brought pursuant to CPLR article 77 for judicial instructions as to the administration and distribution of a settlement payment, held that (1) the settlement payment should be made using the "subsequent recovery write-up instructions" in the associated pooling and servicing agreements (PSAs), unless the relevant PSA is silent as to the write-up mechanics, in which case the "Settlement Agreement write-up instruction" of Section 3.06(b) should be applied as a "gap filler"; (2) the trustees should not write up the "certificate principal balance" of senior certificates in connection with the Settlement Payment in trusts where the PSA write-up instructions only address a write-up of subordinated certificates; (3) the definition of certificate principal balance in the HBK Trust PSAs requires the application of the write-up-first method; (4) the zero balance classes may be written up for the subsequent recovery of the settlement share, and investors in those classes may receive distributions of that amount; and (5) PSA provisions do not apply to grant the Ambac Assurance Corporation a priority right to receive subsequent recoveries obtained by the 2006 Trusts.
Warner Partners, P.C., New York (Kenneth E. Warner of counsel), and Gibbs & Bruns LLP, Houston, TX (David M. Sheeren of the bar of the State of Texas, admitted pro hac vice of counsel) for AEGON USA Investment Management, LLC, BlackRock Financial Management, Inc., Cascade Investment, LLC, Federal Home Loan Bank of Atlanta, Federal Home Loan Mortgage Corp., Federal National Mortgage Association, Goldman Sachs Asset Mgmt L.P., Voya Investment Mgmt LLC, Invesco Advisers, Inc., Kore Advisors, L.P., Metropolitan Life Ins. Co., Pacific Investment Mgmt Company LLC, Teachers Ins. and Annuity Assoc. of America, TCW Group, Inc., Thrivent Financial for Lutherans and Western Asset Mgmt. Co. (the "Institutional Investors"), appellants.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kevin S. Reed of counsel), for American General Life Insurance Company, American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., The United States Life Insurance Company in the City of New York and The Variable Annuity Life Insurance Company (the "AIG Parties"), appellants
Bailey Duquette P.C., New York (David I. Greenberger of counsel), and Perry Johnson Anderson Miller & Moskowitz LLP, Santa Rosa, CA (Isaac M. Gradman of the bar of the State of California, admitted pro hac vice of counsel), for DW Partners LP and Ellington Management Group, L.L.C. (the "DW/Ellington Parties"), appellants.
Schindler Cohen & Hochman LLP, New York (Jonathan L. Hochman and Anna Vinogradov of counsel), and Kramer Levin Naftalis & Frankel LLP, New York (Philip Bentley and Andrew Pollack [*2]of counsel), for Tilden Park Investment Master Fund LP, Tilden Park Management I LLC, and Tilden Park Capital Management LP (the "Tilden Park Parties"), appellants.
Patterson Belknap Webb & Tyler LLP, New York (Henry J. Ricardo of counsel), for Ambac Assurance Corporation, appellant.
Axinn, Veltrop & Harkrider LLP, New York (Felix J. Gilman and Donald W. Hawthorne of counsel), for Poetic Holdings VI LLC, Poetic Holdings VII LLC, and Prophet Mortgage Opportunities LP (the "Prophet and Poetic Parties"), appellants.
Perkins Coie LLP, New York (Martin Gilmore and Sean Connery of counsel), for U.S. Bank N.A., solely in its capacity as NIM Trustee for the Poetic and Prophet Trusts and as NIM Trustee for the HBK Trusts, appellant.
Kobre & Kim LLP, New York (Danielle L. Rose, Zachary D. Rosenbaum and Darryl G. Stein of counsel), for U.S. Bank N.A., solely in its capacity as NIM Trustee for the HBK Trusts (the "HBK Parties"), appellant.
McKool Smith, P.C., New York (Robert W. Scheef, Gayle R. Klein, David I. Schiefelbein and Steven R. Fisher of counsel), for Nover Ventures LLC, respondent.
Goulston & Storrs PC, New York (Charles R. Jacob III of counsel), and Perry, Johnson, Anderson, Miller & Moskowitz LLP, Santa Rosa, CA (Isaac M. Gradman of the bar of the State of California, Edward P. Allinson, of the bar of the State of California, admitted pro hac vice of counsel and Kristin A. Mattiske-Nicholls), for D.E. Shaw Refraction Portfolios, L.L.C. ("D.E. Shaw"), respondent.
Dechert LLP, New York (Mauricio A. EspaÑa of counsel), for Strategos Capital Management, LLC, respondent.
Patterson Belknap Webb & Tyler LLP, New York (Diana M. Conner and Peter W. Tomlinson of counsel), for Olifant Fund, Ltd., FFI Fund Ltd. and FYI Ltd. (the "Olifant Funds"), respondents.
Davis Polk & Wardwell LLP, New York (Joshua S. Sturm and Marie Killmond of counsel), for GMO Opportunistic Fund and GMO Global Real Return (the "GMO Parties"), respondents.
Kleinberg, Kaplan, Wolff & Cohen, P.C., New York (Maya D. Cater of counsel), for amicus curiae.
MANZANET-DANIELS, J.P.
Petitioner trustees, overseeing more than 300 residential mortgage-backed security (RMBS) trusts, commenced this CPLR article 77 proceeding to obtain judicial guidance regarding the manner in which a $4.5 billion global settlement payment by JPMorgan Chase & Co. to investors is to be administered and distributed.
RMBS trusts are debt-based securities, similar to bonds, that are backed by the principal and interest paid on the underlying assets—typically thousands of bundled residential mortgage loans. When an investor buys a certificate in an RMBS trust, the investor is in effect acquiring the right to receive some portion of repayment of the principal and interest on the underlying mortgages. The so-called "waterfall provisions" in the governing agreement of each settlement trust dictate the principal amounts and interest amounts distributable to classes of certificates and the order of priority [*3]of distribution among classes. These provisions instruct the trustee or administrator how to account for payments collected and how to account for any losses the trust may incur (i.e., upon default of a mortgagee) against the value of the investors' certificates. As payments are made or losses are recognized, the value of the certificates, or the "certificate principal balance," is reduced or "written down."
The governing agreements also set forth when and how a certificate principal balance may be increased, or "written up" upon receipt of funds other than principal and interest payments, typically when the trust acquires additional funds to offset prior losses—for example, the receipt of funds after the property has been foreclosed on. Such proceeds are known as a "subsequent recovery."
The settlement agreement sets forth the means for calculating and distributing the allocable share to each of the settlement trusts. The allocable share was calculated by measuring each trust's pro rata share of the losses suffered as a percentage of all losses suffered by the settlement trusts. The settlement agreement provides that each settlement trust shall distribute its allocable share to investors as though it were a "subsequent recovery" under the terms of its governing agreement.
On February 13, 2020, the Supreme Court issued a 46-page order resolving the article 77 petition issues and instructing the trustees in the proper manner of administering and distributing the settlement payment to certificate holders. We now affirm.
The court correctly determined that Section 3.06(b) of the settlement agreement is a "gap filler" intended only to apply where the governing agreement is silent as to write-up mechanics and does not supersede or override the governing agreements. Section 3.06(a) provides that each settlement allocable share shall be distributed to the certificate holders in accordance with the distribution provisions of the respective governing agreements:
"Each Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution to Investors in accordance with the distribution provisions of the Governing Agreements, for further distribution to Investors in accordance with the distribution provisions of the Governing Agreements . . . as though such Allocable Share [were] a 'subsequent recovery.'"
As noted by the court, Section 3.06(a) "expressly defers to the distribution provisions of the Governing Agreements [so that] the Governing Agreements control where they specify the order of operations, and the Settlement Agreement controls only where the Governing Agreements do not specify such order."
Section 7.05 provides that the settlement agreement "is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement." Had the drafters intended Section 3.06(b) to be an exception to [*4]the Section 7.05 mandate that the settlement agreement not amend any term of the governing agreement, they would have expressly said so. They did not.
The general merger clause in section 7.13, cited by certain respondents, is not to the contrary. The governing agreements were negotiated among parties other than those defined as "parties" to the settlement agreement, and therefore those agreements were not "between the Parties" as set forth in Section 7.13. More importantly, Section 7.13 is explicitly made "[s]ubject to Section 7.05," which, as discussed, provides that the settlement agreement does not amend the governing agreements.
The court correctly found that where the governing agreements provide only for the write-up of subordinate certificates—conspicuously excluding senior certificates from the write-up instructions—the plain and unambiguous intent is that only subordinate certificates will be written up. The exemplar trust focused on by the court provides, in relevant part:
"If, after taking into account such Subsequent Recoveries, the amount of a Realized Loss is reduced, the amount of such Subsequent Recoveries will be applied to increase the Certificate Principal Balance of the related Class of Group II Subordinate Certificates or Group III Subordinate Certificates with the highest payment priority to which Realized Losses have been allocated."
(BALTA 2006-3 governing agreement § 6.04[h]). This section provides only for the write-up of the balances of the specified subordinate certificates to the extent of previously allocated realized losses.
Certain respondents assert that the subordinate write-up provisions are "silent" regarding the write-up of senior certificates. The subordinate write-up provisions, however, are not in fact silent as to senior certificates; by purposefully omitting the write-up of senior certificates from these provisions, the drafters clearly intended to express that only subordinate certificates are to be written up (see Ambac Assur. Corp. v EMC Mtge. LLC, 121 AD3d 514, 518 [1st Dept 2014] ["the omission of a term . . . must be deemed an intentional choice of the parties to the agreement"]).
Where the drafters intended the parties to write-up senior certificates, the governing agreements expressly so state. For example, BALTA 2006-3 provides for the write-up of Group I senior certificates:
"Notwithstanding the forgoing[sic], any Subsequent Recoveries will be allocated to the Group I Senior Certificates to the extent of any Applied Realized Loss Amounts before being applied to the Group I Subordinate Certificates."
(§ 6.03[b]).
The only explanation for the exclusion of such language from the write-up provisions was the parties' intent to limit the write-up to subordinate certificates.
The institutional investors' reliance on the definition of "realized loss" to argue to the contrary is misplaced. As the court explained, "[W]hile the Realized Loss definition provides for the allocation of losses [*5]to reduce certificate balances . . . including senior certificates, the definition does not address the write-up of balances of certificates to account for subsequent recoveries."
The court was correct not to consider extrinsic evidence because the subordinate write-up provisions unambiguously provide for the write-up of only subordinate certificates. Extrinsic evidence of a contract's meaning should only be considered if the contract is ambiguous (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]).
The court correctly found that zero-balance certificates are eligible for write-ups and distributions. The definition of certificate principal balance provides that all certificates are eligible to be written up on account of subsequent recoveries, without exception. This provision does not exclude zero-balance certificates from receiving write-ups relating to subsequent recoveries; rather, it provides that "any Certificate" may receive such write-ups pursuant to Section 5.04(b), which specifies how write-ups relating to subsequent recoveries will be allocated among certificate classes. This limitation makes sense because subsequent recoveries are intended to function as reversals of prior realized losses on the certificates.
The retired class provisions relate solely to distributions and nowhere state that zero-balance certificates are ineligible to be written up on account of subsequent recoveries. The retired class provisions merely provide that once a certificate has been paid in full and formally retired, it is no longer entitled to receive distributions that it might have otherwise received under the waterfall. The zero-balance certificates here have neither been fully repaid nor withdrawn from the market pursuant to the procedures set forth in the relevant governing agreements; rather, they have outstanding losses and are still actively traded. The provisions make clear that certificates are only considered "retired" when the trustee has undertaken certain affirmative steps to accomplish that end—e.g., paying off the certificates and withdrawing them from circulation; the mere reduction of the certificate balances to zero is insufficient. "[C]ontract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect" (Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate Holdings, LLC, 149 AD3d 127, 134 [1st Dept 2017]).
Section 3.06(b) of the settlement agreement authorizes the write-up of "each class of securities" to which losses have previously been allocated. The "subsequent recovery" provisions do not limit the classes eligible for write-ups, which accords with the settlement agreement's objective to compensate investors for mortgage loan losses.
The court correctly found, with respect to the BSABS 2005-AQ2 Trust and, by extension, the HBK Trusts, that the relevant governing agreements require the trustees to apply the write-up-first methodology. Because, by the plain language [*6]of the governing agreements, no distributions of principal can be made under the waterfall provisions without reference to the Certificate Principal Balance, and because the Certificate Principal Balance is defined to include subsequent recoveries added to the Certificate Principal Balance pursuant to Section 5.04(b) "as of" any distribution date, the write-up-first order of operations must necessarily apply.
HBK's argument that the sequence of the distribution and write-up provisions in the PSA calls for the use of the pay-first methodology is unavailing. As the court noted, "The mere sequence of these provisions cannot serve to impose an order of operations, and . . . neither section imposes an order of operations."
The trustees' concern about the potential for the pay-first method to cause trusts with an overcollateralization structure to be temporarily overcollateralized is irrelevant, given the court's ruling that the write-up-first method applies. As even HBK acknowledges, the court's interpretation of the overcollaterization amount definition is of no consequence to trusts following the write-up-first method.
The court correctly found that under the terms of the relevant agreements, Ambac Assurance Corporation was not entitled to priority repayment ahead of the A1 certificates. Section 6.02 does not modify or contradict Section 6.01 to the extent that it provides that A1 certificates are entitled to payment of subsequent recoveries through the principal distribution waterfall on a pro rata basis until the certificate principal balances are zero. As the court noted, Ambac will receive the pro rata payment designated for the A2 certificates as reimbursement for the claim payments Ambac made to the A2 certificate holders.
We have considered and rejected respondents' other contentions.
Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered February 13, 2020, which, insofar as appealed from as limited by the briefs, upon the petition brought pursuant to CPLR article 77 for judicial instructions as to the administration and distribution of a settlement payment, held that (1) the settlement payment should be made using the "subsequent recovery write-up instructions" in the associated pooling and servicing agreements (PSAs), unless the relevant PSA is silent as to the write-up mechanics, in which case the "Settlement Agreement write-up instruction" of Section 3.06(b) should be applied as a "gap filler"; (2) the trustees should not write up the "certificate principal balance" of senior certificates in connection with the Settlement Payment in trusts where the PSA write-up instructions only address a write-up of subordinated certificates; (3) the definition of certificate principal balance in the HBK Trust PSAs requires the application of the write-up-first method; (4) the zero balance classes may be written up for the subsequent recovery of the settlement share, and investors in those classes may receive [*7]distributions of that amount; and (5) PSA provisions do not apply to grant the Ambac Assurance Corporation a priority right to receive subsequent recoveries obtained by the 2006 Trusts, should be affirmed, without costs.
Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered February 13, 2020, affirmed, without costs.
Opinion by Manzanet-Daniels, J.P. All concur.
Manzanet-Daniels, J.P., Kapnick, Mazzarelli, Oing, JJ. M-00975 & In the Matter of Wells Fargo, et al. v AEGON USA
M-00123 Investment Management, LLC, et al.,
Motion for leave to file amicus brief (M-00975) and motion to reinstate five respondents' briefs (M-00123) granted.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 19, 2021