Chetrit v HPS Inv. Partners, LLC (2024 NY Slip Op 01867)

Chetrit v HPS Inv. Partners, LLC

2024 NY Slip Op 01867

Decided on April 04, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 04, 2024

Before: Renwick, P.J., Manzanet-Daniels, Kennedy, Mendez, Michael, JJ. 

Index No. 652725/23 Appeal No. 1978 Case No. 2023-05385 

[*1]Jacob Chetrit, Plaintiff-Appellant,
v
HPS Investment Partners, LLC, Defendant-Respondent.

Nutter, McClennen & Fish LLP, New York (Christopher J. Sullivan and John C. Leddy of counsel), for appellant.
Fried, Frank, Harris, Shriver, & Jacobson, LLP, New York (Janice Mac Avoy of counsel), for respondent.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about October 10, 2023, which granted defendant's motion to dismiss the complaint, unanimously affirmed, with costs.
This appeal concerns an assignment-in-lieu of foreclosure. Plaintiff Jacob Chetrit, a real estate investor, defaulted on two loans totaling $320,000,000 secured by a commercial office building in Manhattan. Under certain guaranties plaintiff was obligated to pay certain carrying costs for the property until defendant HPS Investment Partners, LLC chose to acquire title to the property. The charges for which plaintiff was responsible included loan interest payments, real estate taxes, insurance payments and certain other costs associated with carrying the property. The loan documents provided that if plaintiff "tendered" a deed-in-lieu (or assignment-in-lieu) of foreclosure along with certain other documents, and plaintiff paid defendant certain amounts of money (the required payments), plaintiff would be relieved of further liability under his guaranties.
Following extensive negotiations, plaintiff and defendant entered into two agreements, one for each loan, for an assignment in lieu of foreclosure. Pursuant to the agreements, plaintiff tendered the required documents under the tender conditions of the guaranties and agreed to pay a lump-sum "Settlement Payment" of $35.4 million to satisfy all his obligations under the guaranties, including the required payments. According to plaintiff, the Settlement Payment consisted of $10,480,000 for city and state transfer taxes (which was calculated based on the $320 million that was due under the guaranties), among other required payments. The agreements, however, did not specify the amount of transfer taxes to be paid or otherwise itemize the application of the Settlement Payment. Pursuant to a separate agreement, defendant agreed to file the required tax forms for the transfer and pay the transfer taxes due.
Defendant then accepted the assignment-in-lieu of foreclosure. Plaintiff made the agreed upon "Settlement Payment," which was explicitly identified as a lump sum payment. The complaint alleges that defendant ultimately applied the Settlement Payment to the outstanding debt, thereby lowering the debt total upon which the transfer taxes were calculated, and thus resulting in defendant's payment of lower amounts of New York City and State transfer taxes. Plaintiff claims that defendant unfairly retained the difference between the tax liability anticipated by the Settlement Agreement and the amount actually paid by defendants, and that he should be entitled to recover the difference as damages.
Supreme Court properly determined that the parties' agreement renders plaintiff's claims untenable as a matter of law. It is well settled that "'[a] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms'" (Marin v Constitution Realty, LLC, 28 [*2]NY3d 666, 673 [2017], quoting Greenfield v Philles Records, Inc., 98 NY2d 562, 569 [2002]; see also W.W.W. Assoc., Inc. v Giancontieri, 77 NY2d 157, 162 [1990]). Where, as here, a contract is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157).
Here, contrary to plaintiff's allegations, there is no provision in the contracts stating the amount of the transfer tax to be paid by defendant or providing for any refunds to plaintiff or any type of post-closing adjustments if any of the required payments turned out to be less than the parties anticipated when they agreed on the total amount of the Settlement Payment. Rather, under the plain meaning of the contracts, plaintiff agreed to pay a "Settlement Payment" in full satisfaction of the "Required Payments." Thus, plaintiff's claim that defendant paid the City and State about $1.7 million less for transfer taxes than he believes was required to be paid, and unfairly kept the difference, does not give him any right to seek recovery of the alleged tax underpayment. As defendant correctly argues, plaintiff agreed to pay a single, lump-sum amount of $35.4 million in satisfaction of his obligation to make the required payments, regardless of defendant's actual application of the Settlement Payment.
Furthermore, Supreme Court properly found that "plaintiff released his claims in full at the time the transaction was entered into by means of a general release." Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release (Centro Empresarial Cempresa S.A. v. AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011]). The releases apply to any claim that "could or does exist as of the date of this Agreement," and the borrowers further agreed that "factual matters now unknown . . . may hereafter give rise to causes of action, . . . presently unknown, unanticipated and unsuspected," which were also intended to release. Under its plain terms, this release contemplated claims related to the parties' dispute over the amount of transfer taxes to be paid. The fraud claim is barred by the releases because it is based on alleged false assurances made before the date of the Agreements that defendant would pay the full transfer taxes (see Centro Empresarial Cempresa S.A. v Am. MÓvil, S.A.B. de C.V., 17 NY3d at 272).
We have considered the remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 4, 2024