**In re: KAISER ALUMINUM CORPORATION, et al., Debtors.**

**Law Debenture Trust Company of New York, Appellant.**

No. 08–1406.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 2009.

Filed: Nov. 2, 2009.

Daniel J. DeFranceschi, Jason M. Madron, Richards, Layton & Finger, Wilmington, DE, Gregory M. Gordon, Daniel P. Winikka, Dallas, TX, David F. Herr (Argued), Maslon, Edelman, Borman & Brand, Minneapolis, MN, for Kaiser Aluminum Corporation.

Roy T. Englert, Jr. (Argued), Robbins, Russell, Englert, Orseck & Untereiner, Washington, DC, for Law Debenture Trust Company of New York.

David J. Baldwin, Wilmington, DE, Isaac M. Pachulski, Kenneth J. Shaffer, Stutman, Treister & Glatt, Los Angeles, CA, for Liverpool LTD Partnership.

David F. Herr (Argued), Kesha L. Tanabe, Maslon, Edelman, Borman & Brand, Minneapolis, MN, for U.S. Bank National Association.

William P. Bowden, Ashby & Geddes, Wilmington, DE, for JP Morgan Trust Co. and Official Committee of Unsecured Creditors.

David F. Herr (Argued), Maslon, Edelman, Borman & Brand, Minneapolis, MN, for Citadel Equity Fund.

David N. Crapo, Brian McMahon, Gibbons, P.C., Newark, NJ, for Bear Stearns & Co., Citadel Equity Fund.

Karen C. Bifferato, Marc J. Phillips, Connolly, Bove, Lodge & Hutz, Wilmington, DE, George A. Davis, Gregory A. Markel, Cadwalader, Wickersham & Taft, Adam C. Dembrow, Greenberg Traurig, New York, NY, David F. Herr (Argued), Maslon, Edelman, Borman & Brand, Minneapolis, MN, for Ad Hoc Group of Senior Noteholders.

David F. Herr (Argued), Maslon, Edelman, Borman & Brand, Minneapolis, MN, Carl N. Kunz, III, Morris James, Wilmington, DE, for Deutsche Bank Trust.

Sharon M. Zieg, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Cent Indemnity Co., Allstate Ins. Co., Canmart

Co., Pension Benefit Guaranty Corp., Asbestos Futures Representative.

Marc S. Casarino, White & Williams, Wilmington, DE, for Silica Future Claimants, ACE Inc. Co., Ltd.

Mark T. Hurford, Campbell & Levine, Wilmington, DE, for Personal Injury Comm., Asbestos Creditors Comm.

David M. Klauder, United States Department of Justice, Office of the Trustee, Wilmington, DE, for David M. Klauder, Trustee.

## OPINION

SMITH, Circuit Judge.

In this Chapter 11 reorganization case about a 1993 indenture (the "Indenture"), Law Debenture Trust Company of New York ("LDTC"), the indenture trustee under the Indenture, challenges the subordination of a guarantee made in the Indenture (the "1993 Guarantee") to later guarantees (the "1994 and 1996 Guarantees") that it believes were improperly designated as "Senior Indebtedness" under the Indenture. Opposing LDTC are the indenture trustees and noteholders for the notes that were the subject of the 1994 and 1996 Guarantees (collectively, the "1994 and 1996 Noteholders").

LDTC raises two issues on appeal.[1] First, it claims that the District Court erred in affirming the Bankruptcy Court's conclusion that the 1994 and 1996 Guarantees could be designated as Senior Indebtedness under the Indenture. Second, it argues that the District Court erred by permitting the Bankruptcy Court's consideration of extrinsic evidence when construing the Indenture. Our conclusion on the first issue disposes of this appeal and obviates the need for discussion of extrinsic evidence.

We will affirm the District Court's conclusion that the Indenture permitted the designations of the 1994 and 1996 Guarantees as Senior Indebtedness. As such, the 1993 Guarantee is subordinated to the 1994 and 1996 Guarantees.

## I.

In 1993, Kaiser Aluminum & Chemical Corporation ("KACC") issued $400 million in notes (the "1993 Notes") under the Indenture. These notes were guaranteed, in the 1993 Guarantee, by KACC's subsidiaries: Kaiser Aluminum Australia, Alpart Jamaica, and Kaiser Jamaica (the "Subsidiary Guarantors").

In 1994 and 1996, KACC issued additional notes (the "1994 and 1996 Notes") in the amounts of $225 million and $175 million, respectively. Like the 1993 Notes, the 1994 and 1996 Notes were guaranteed, in the 1994 and 1996 Guarantees, by the Subsidiary Guarantors.

In 2002, KACC and each of the Subsidiary Guarantors filed Chapter 11 reorganization petitions. LDTC moved the Bankruptcy Court to determine the relative priority of the 1993 Guarantee vis-á-vis the 1994 and 1996 Guarantees, and the parties agreed to convert the motion into an objection to the proposed Chapter 11 reorganization plan offered by KACC and the Subsidiary Guarantors.

Both parties agree that the Indenture controls the relative priority of the 1993, 1994, and 1996 Guarantees. LDTC asserts that the 1994 and 1996 Guarantees cannot be designated as Senior Indebtedness under the Indenture and, therefore, the 1993 Guarantee is not subordinated to the 1994 and 1996 Guarantees. The 1994 and 1996 Noteholders, on the other hand, claim that the 1994 and 1996 Guarantees qualify as Senior Indebtedness under the Indenture and therefore have priority over the 1993 Guarantee.

---

**1.** This Court has jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

The Bankruptcy Court, in concluding that the 1994 and 1996 Guarantees were properly designated as Senior Indebtedness under the Indenture, noted that "it [was] abundantly clear that the [*pari passu* treatment of the 1993, 1994, and 1996 Guarantees] suggested by LDTC was not created by the Indenture." Accordingly, the Bankruptcy Court overruled LDTC's objection to the proposed Chapter 11 reorganization plan. LDTC appealed to the District Court, which affirmed the Bankruptcy Court's order. LDTC now appeals to this Court.

## II.

LDTC's first argument, that the 1994 and 1996 Guarantees could not be designated as Senior Indebtedness under the Indenture, is based on its rejection of the Bankruptcy Court's construction of the Indenture. We review that construction *de novo*. *STV Eng'rs, Inc. v. Greiner Eng'g, Inc.*, 861 F.2d 784, 787 (3d Cir.1988).

As described below, we conclude that when a Subsidiary Guarantor attempts reorganization, Article 16 of the Indenture subordinates guarantees that are not Senior Indebtedness to all Senior Indebtedness of that Subsidiary Guarantor. We also conclude that the definition of Senior Indebtedness, contained in Article 1 of the Indenture, permitted KACC to designate the 1994 and 1996 Guarantees as Senior Indebtedness and that it properly did so.

*A. Article 16 of the Indenture Subordinates all of a Subsidiary Guarantor's Guarantees that are not Senior Indebtedness to all Senior Indebtedness.*

Section 16.02 of the Indenture subordinates each Subsidiary Guarantor's obligations under the 1993 Guarantee to the Senior Indebtedness of that Subsidiary Guarantor. It states that "all payments pursuant to the [1993] Guarantee by [any] Subsidiary Guarantor are hereby expressly subordinated ... in right of payment to the prior payment in full ... of all Senior Indebtedness of [that] Subsidiary Guarantor."

In the event of a Subsidiary Guarantor's reorganization, Section 16.03 provides "the holders of all Senior Indebtedness of [the] Subsidiary Guarantor [the right] to receive payment in full ... before the holders of the [1993] Notes or the Trustee on behalf of the noteholders shall be entitled to receive, pursuant to the [1993] Guarantee, any direct or indirect payment or distribution on or with respect to the [1993] Notes." In other words, if a Subsidiary Guarantor is reorganizing, it must pay the holders of its Senior Indebtedness in full prior to any payment it is obligated to make under the 1993 Guarantee.

Because the Subsidiary Guarantors are reorganizing, Section 16.03 applies and the holders of their Senior Indebtedness are entitled to payment prior to any payment under the 1993 Guarantee.

*B. The Definition of Senior Indebtedness Permitted the 1994 and 1996 Guarantees to be Designated as Senior Indebtedness.*

To designate a certain indebtedness as Senior Indebtedness, KACC must provide notice of the designation in writing and the type of indebtedness must fall under one of the categories described in the definition of Senior Indebtedness, which is located in Section 1.01 of the Indenture.

It is undisputed that KACC provided proper notice for the 1994 and 1996 Guarantees. Accordingly, the crux of this appeal rests on whether the Indenture permits the 1994 and 1996 Guarantees, guarantees made by the Subsidiary Guarantors for KACC's 1994 and 1996 Notes, to be designated as Senior Indebtedness. The 1994 and 1996 Noteholders argue that clauses (ii)(A)(1) and (ii)(D) of the

definition of Senior Indebtedness permitted designation of those guarantees as Senior Indebtedness. We agree.

Clause (ii)(A)(1), as applied to each Subsidiary Guarantor, states that "the principal of, premium, if any, and interest on all indebtedness of [the Subsidiary Guarantor] for money borrowed (including all such indebtedness evidenced by notes, debentures or other securities issued for money, whether issued or assumed by [the Subsidiary Guarantor])" may be designated as Senior Indebtedness by KACC. A guarantee involves an "agree[ment] to answer for a debt or default." BLACK'S LAW DICTIONARY 773 (9th ed.2009). Such agreements are "[a] promise to answer for the payment of some debt ... in case of the failure of another who is liable in the first instance." Id. (defining "guaranty"). The Subsidiary Guarantors assumed indebtedness, the promise to answer for KACC's debts in case of its failure to repay money borrowed, by guaranteeing the 1994 and 1996 Notes.

LDTC argues that such an understanding of the Indenture would render clause (ii)(A)(5) of the definition of Senior Indebtedness superfluous. That clause states that "all guarantees by [the Subsidiary Guarantor] of any indebtedness referred to in ... clause (ii)(A) of any Subsidiary of [the Subsidiary Guarantor]" may be designated as Senior Indebtedness if proper notice is issued by KACC. LDTC properly notes that clause (ii)(A)(5) only covers a Subsidiary Guarantor's guarantees of its own subsidiaries.[2] If clause (ii)(A)(1) covers all guarantees, then, according to LDTC, clause (ii)(A)(5) would serve no purpose because it covers a subset of all guarantees. To avoid rendering clause (ii)(A)(5) superfluous, LDTC asserts, clause (ii)(A)(1) must be construed to exclude guarantees.

We disagree with LDTC's argument. Clause (ii)(A)(1) is narrower than clause (ii)(A)(5), because the former is limited to indebtedness for money borrowed, whereas the latter includes all guarantees, for any purpose, made by a Subsidiary Guarantor for its own subsidiaries. For example, clause (ii)(A)(5) would include a Subsidiary Guarantor's guarantee of a subsidiary's lease obligations, while clause (ii)(A)(1) would not. Some overlap in the two clauses is not fatal, especially in light of the other overlapping provisions in the definition of Senior Indebtedness.[3]

LDTC also argues that we must presume that the Indenture intended to exclude a Subsidiary Guarantor's guarantee of a parent company because clause (ii)(A)(5) only covers a Subsidiary Guarantor's guarantee of a subsidiary. LDTC's

---

**2.** KACC cannot designate the 1994 and 1996 Guarantees as Senior Indebtedness under clause (ii)(A)(5) because it is the parent company of the Subsidiary Guarantors.

**3.** Clauses (ii)(A)(1), (ii)(A)(5), and (ii)(A)(7) are illustrative. Clause (ii)(A)(7) covers "all obligations of [a Subsidiary Guarantor] in connection with the issuance of industrial revenue bonds." Assuming, hypothetically, that a subsidiary of a Subsidiary Guarantor issued industrial revenue bonds, that proper written notice was provided, and that the Subsidiary Guarantor guaranteed those industrial revenue bonds, clauses (ii)(A)(1), (ii)(A)(5), and (ii)(A)(7) would all permit the guarantee to be

designated as Senior Indebtedness. Clause (ii)(A)(1) would apply because the indebtedness incurred was for money borrowed, (ii)(A)(5) would apply because it was a guarantee of a subsidiary by a Subsidiary Guarantor, and (ii)(A)(7) would apply because it was an "obligation" incurred by the Subsidiary Guarantor in connection with the issuance of industrial revenue bonds.

Clause (ii)(D) also shows the Indenture's tolerance of superfluous drafting—it contains overlap even within itself. It uses the phrase "Indebtedness, obligation or guarantee" yet the definition of "Indebtedness" in Section 1.01 of the 1993 Indenture includes at least some obligations and all guarantees.

argument runs contrary to the structure of the Indenture. Clauses (a) through (e) of the definition of Senior Indebtedness exclude specific categories of indebtedness from being designated as Senior Indebtedness. Guarantees of a parent company are not categorically excluded in those clauses. The mere presence of the exclusion clauses negates LDTC's argument that the Indenture was intended to implicitly exclude guarantees of a parent company. If the Indenture was intended to exclude such guarantees, the exclusion could have been listed with the other exclusion clauses. In short, we will not presume an implicit exclusion of guarantees of a parent company where the Indenture has exclusion clauses.

Finally, LDTC argues that clause (ii)(A)(1) covers only money borrowed by each Subsidiary Guarantor. LDTC would have us include additional terms in clause (ii)(A)(1) so that it reads as follows: "all indebtedness of such Person for money borrowed [*by such Person*]." This Court, however, is prohibited from adding terms to the Indenture. *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.")[4]. "Indebtedness for money borrowed," including "notes ... whether issued or *assumed*," may be designated as Senior Indebtedness. The Subsidiary Guarantors' assumptions of indebtedness for money borrowed by KACC through the 1994 and 1996 Guarantees, therefore, is covered under clause (ii)(A)(1).

The designations of the 1994 and 1996 Guarantees as Senior Indebtedness were also proper under clause (ii)(D). That clause, as applied to each Subsidiary Guarantor, states that "all penalties, fees, premiums, expenses, reimbursements, indemnity obligations and all other monetary obligations of [the Subsidiary Guarantor] in respect of any Indebtedness, obligation, or guarantee described [anywhere in clause (ii) of the definition of Senior Indebtedness]" may be designated as Senior Indebtedness by KACC. LDTC concedes that the 1994 and 1996 Notes are Senior Indebtedness under the Indenture. The 1994 and 1996 Guarantees were monetary obligations undertaken by the Subsidiary Guarantors in respect of the 1994 and 1996 Notes issued by KACC. Therefore, the 1994 and 1996 Guarantees may properly be designated as Senior Indebtedness under clause (ii)(D).

LDTC argues that the monetary obligations incurred by each Subsidiary Guarantor must be in respect of its own "Indebtedness, obligation, or guarantee" that could otherwise be properly designated as Senior Indebtedness. LDTC's construction of clause (ii)(D) cannot be reconciled with the text. *See W.W.W. Assocs.,* 565 N.Y.S.2d 440, 566 N.E.2d at 642. Clause (ii)(D) states that each Subsidiary Guarantor's monetary obligation may arise from "*any* Indebtedness, obligation or guarantee," that would otherwise qualify as Senior Indebtedness under clause (ii). This includes KACC's 1994 and 1996 Notes and any other "Indebtedness, obligation, or guarantee" of any entity that would otherwise qualify as Senior Indebtedness under clause (ii) of the Indenture, not just the Subsidiary Guarantor's "Indebtedness, obligations and guarantees."

### III.

LDTC also argues that the Bankruptcy Court's evaluation of extrinsic evidence was improper under New York law. Because the Indenture is unambiguous, we resolve this appeal on the construction of

---

4. Section 15.04 of the Indenture states that the Indenture is governed by New York law.

the Indenture alone and need not discuss extrinsic evidence.

### IV.

The Indenture's definition of Senior Indebtedness permitted designation of the 1994 and 1996 Guarantees as Senior Indebtedness. Because the Indenture's language is unambiguous, this Court need not address whether the extrinsic evidence was properly admitted. Accordingly, we will affirm the District Court's judgment.