| **Atalaya Special Opportunities Fund VII LP v Whited** |
|:---:|
| 2023 NY Slip Op 34559(U) |
| December 31, 2023 |
| Supreme Court, New York County |
| Docket Number: Index No. 652767/2020 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

ATALAYA SPECIAL OPPORTUNITIES FUND VII LP and
MIDTOWN MADISON MANAGEMENT LLC,

                                              Plaintiffs,

                        - v -

JIMMY ERIC WHITED,

                                       Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 652767/2020 |
| MOTION DATE | |
| MOTION SEQ. NO. | 004 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183

were read on this motion to/for                   JUDGMENT - SUMMARY                          .

       Plaintiffs Atalaya Special Opportunities Fund VII LP (Atalaya) and Midtown Madison Management LLC (Midtown) bring this action to enforce a guaranty executed by defendant Jimmy Eric Whited.  Plaintiffs assert claims for breach of contract to collect on the guaranty and for a declaratory judgment, seeking a declaration that Whited's liability includes on-demand payment of plaintiffs' out-of-pocket expenses, including reasonable attorneys' fees.  Plaintiffs now move for summary judgment on both claims.

**Background**

       Unless indicated otherwise, the following facts were taken from the parties' joint statement of undisputed facts (JSUF) and Rule-19 Statements of Material Fact where undisputed.

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No.  004

Page 1 of 20

Whited was, at times, "the chief executive officer, managing member, and/or sole member of a group of insurance businesses (the 'Windhaven Entities')." (NYSCEF Doc No. [NYSCEF] 101, JSUF ¶ 3.) Among these insurance businesses were Windhaven Insurance Company (WIC) and Windhaven National Insurance Company (WNIC), domiciled in Florida and Texas, respectively. (NYSCEF 166 Defendant's Counterstatement of Material Fact [Defendant Counterstatement] ¶ 32; NYSCEF 169, Plaintiffs' Response to Defendant's Counterstatement [Plaintiffs' Response] ¶ 32.)

Greenlight Reinsurance, Ltd. (Greenlight) was the Windhaven Entities' reinsurer. (*Id.* ¶ 44.) Its reinsurance agreement with WIC provided for "sliding-scale ceding commissions," meaning that the ceding commissions, which the reinsurer paid to WIC for procuring policies, were subject to adjustment based on those policies' performance. (*Id.* ¶¶ 45-47.) Greenlight and WIC agreed to defer the payment of commissions owed to Greenlight based on these adjustments. (*Id.* ¶ 48.)

On March 4, 2019, five Windhaven Entities (Whited and Sons LLC, Windhaven Select, LLC, Windhaven Underwriters, LLC, Clutch Analytics, LLC, and Windhaven Insurance Holdings Corporation), as borrowers, Atalaya, as lender, and Midtown, as Atalaya's administrative and collateral agent, entered into a credit agreement (Credit Agreement) in connection with a $35.5 million loan (Loan). (NYSCEF 101, JSUF ¶¶ 4, 5; NYSCEF 83, Credit Agreement.) The Credit Agreement identifies WIC and WNIC as "Subsidiaries" of a "Loan Party." (NYSCEF 83, Credit Agreement at 36/90,[1] 84/90 [§ 5 (h), Schedule 5 (h)].) "A 'major point' of the . . . Loan was to enable Windhaven to meet its sliding scale obligations to Greenlight." (NYSCEF 166 Defendant's

---

[1] NYSCEF pagination.

**652767/2020 ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No. 004**

**Page 2 of 20**

[* 2]

Counterstatement Defendant Counterstatement ¶ 49; NYSCEF 169, Plaintiffs'

Response ¶ 49.)

In pertinent part, the Credit Agreement defines an "Event of Default" to include

the following:

> "(c) (i) the occurrence of a Bankruptcy Event with respect to any Loan Party or Whited, (ii) any Loan Party or any of its Subsidiaries becomes unable or admits in writing its inability or fails generally to pay its debts as they become due or is deemed unable to pay its debts as they fall due for the purposes of any Debtor Relief Law, or (iii) any Insurance Company Subsidiary fails to maintain minimum capital and surplus as required by any Insurance Regulatory Agency with jurisdiction thereover or over its business that requires or permits such regulator to institute liquidation, rehabilitation, conservation or other similar supervision of such Insurance Subsidiary, unless cured within forty-five (45) days."

(NYSCEF 83, Credit Agreement at 11/90 [§ 1(a)].)[2]

It defines "Bankruptcy Event" to mean:

> "with respect to any Person, the commencement by such Person of a voluntary case or other proceeding involving its liquidation, winding-up, bankruptcy or sequestration or otherwise seeking reorganization or other relief with respect to itself or its debts under any Debtor Relief Law or seeking the appointment of a trustee, receiver, liquidator, conservator, rehabilitator, custodian or other similar official of it or any substantial part of its property, or such Person shall consent to any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors, or shall fail generally, or admit in writing its inability, to pay its debts as

---

[2] "Debtor Relief Laws" is defined as "the Bankruptcy Code, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States of America, any state, or other applicable jurisdictions from time to time in effect affecting the rights of creditors generally, including applicable Insurance Laws." (NYSCEF 83, Credit Agreement at 10-11/90 [§ 1(a)].)

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**                                **Page 3 of 20**
**Motion No.  004**

they become due, or shall take any corporate action to authorize any of the foregoing; or any involuntary case or other proceeding shall be commenced against such Person involving its liquidation, winding-up, bankruptcy or sequestration or otherwise seeking reorganization or other relief with respect to it or its debts under any Debtor Relief Law that is not dismissed, discharged, stayed or restrained in each case within 45 days of the institution or presentation thereof; or an order for relief is entered in any such proceeding or such Person becomes the subject of the appointment of a trustee, receiver, rehabilitator, conservator, liquidator, custodian, or other similar official with respect to a substantial part of its property."

(*Id.* at 6-7/90.) The Credit Agreement gives Atalaya the right to appoint a single representative to receive notices of, and be present at, all meetings of the board of directors for each borrower entity and its subsidiaries. (*Id.* at 47-48/90 [§ 6 (a) (xiv)].)

In connection with the Loan, Whited, as guarantor, and Midtown, as agent for the Credit Agreement's lenders, entered into a validity guaranty (Validity Guaranty). (NYSCEF 166 Defendant's Counterstatement ¶ 49; NYSCEF 169, Plaintiffs' Response ¶ 49; NYSCEF 84 and 119[3], Validity Guaranty.) The Validity Guaranty is a bad actor guaranty, intended to align Atalaya's and Whited's interests during the life of the Loan. (NYSCEF 166, Defendant's Counterstatement ¶¶ 60, 64; NYSCEF 169, Plaintiffs' Response ¶¶ 60, 64.) It provides that Whited becomes liable for the borrowers' obligations under the Credit Agreement upon the occurrence of any "Trigger Event"

---

[3] The parties submit two versions of the Validity Guaranty which are identical except for the date. (*Compare* NYSCEF 84 [dated March 4, 2019] *with* NYSCEF 119 [dated March 1, 2019].) The parties dispute whether the Validity Guaranty was executed on the first or the fourth of March 2019. (*See* NYSCEF 166 Defendant's Counterstatement ¶ 49; NYSCEF 169, Plaintiffs' Response ¶ 59.) For convenience, the court will cite to the first version of the document, NYSCEF 84, when refencing the Validity Guaranty.

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**                    **Page 4 of 20**
**Motion No. 004**

(NYSCEF 84, Validity Guaranty at 2-5/15 [§ 1 (a), (b)].)  One Trigger Event, "Voluntary

Bankruptcy" (Voluntary Bankruptcy Provision), states:

> "*Voluntary Bankruptcy*: any Loan Party or any Subsidiary
> thereof commences a voluntary case or other proceeding
> involving its liquidation, winding-up, bankruptcy or
> sequestration or otherwise seeking reorganization or other
> relief with respect to itself or its debts under any Debtor
> Relief Law or seeking the appointment of a trustee, receiver,
> liquidator, conservator, rehabilitator, custodian or other
> similar official of it or any substantial part of its property, any
> such relief or to the appointment of or taking possession by
> any such official in any involuntary case or other proceeding
> commenced against it (an 'Involuntary Proceeding'), or shall
> make a general assignment for the benefit of creditors, or
> shall fail generally, or admit in writing its inability, to pay its
> debts as they become due, or shall take any corporate
> action to authorize any of the foregoing (unless, in any such
> case, the Agent on behalf of the Lenders, provided its prior
> written consent thereto); or the Guarantor or any Company
> Party shall intentionally collude with any third party in to
> effect the filing or petition of an Involuntary Proceeding
> against a Loan Party or Subsidiary thereof."

(*Id.* at 4/15 [§ 1 (b) (viii)].)  The Validity Guaranty provides that "capitalized terms used

but not defined herein have the meanings assigned to such terms in the Credit

Agreement" (*id.* at 2 [Recital A]) and that "[t]he Guarantor shall pay on demand all out-

of-pocket expenses (including reasonable attorneys' fees and expenses) in any way

relating to the enforcement or protection of Guaranteed Parties' rights under this

Guaranty" (*id.* at 9/15 [§ 7].)

On March 4, 2019, Whited also executed a validity guaranty with Greenlight.

(NYSCEF 101, JSUF ¶ 6; NYSCEF 85, Greenlight Guaranty.)  Atalaya and Greenlight

entered into an intercreditor agreement, whereby Greenlight subordinated its debt to

that of Atalaya's.  (NYSCEF 166 Defendant's Counterstatement ¶¶ 82, 83; NYSCEF

169, Plaintiffs' Response ¶¶ 82, 83.)

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

Page 5 of 20

5 of 20

After the Loan closed, Sachin Sarnobat, who was a managing director at Atalaya at the time and Atalaya's "deal lead" on the Loan, "attended WIC and WNIC Board meetings as an observer, and Atalaya was in regular contact with Windhaven by email, phone, and in-person visit." (*Id.* ¶¶ 37-38, 90.)

After the Loan closed, the Windhaven Entities experienced financial difficulties. (*Id.* ¶ 93.) In April 2019, Ambina Partners (Ambina), a private equity firm retained by Atalaya to provide consulting services in connection with the Loan, predicted that a Windhaven default was highly likely. (*Id.* ¶¶ 42, 95.)

On November 15, 2019, Greenlight's General Counsel emailed the Windhaven Entities, stating that the ceding commission liability of more than $26 million was 108 days overdue. (NYSCEF 134, Greenlight Email.) However, Whited claims that this amount was "not set." (NYSCEF 160, tr at 447:17-21 [Whited Depo].) It is undisputed that Greenlight owed WNIC more than $10 million in ceding commissions and additional capital. (NYSCEF 166 Defendant's Counterstatement ¶ 102; NYSCEF 169, Plaintiffs' Response ¶ 102.) The Windhaven Entities claim that "it is unclear whether Greenlight took that amount into consideration as part of its unilateral demand." (NYSCEF 166, Defendant's Counterstatement response to ¶ 24.)

Also on November 15, 2019, with the consent of WIC's board of directors, Whited executed: (1) a Consent Order for Administrative Supervision (Consent Order) and (2) a Consent to Order of Receivership. (*See* NYSCEF 166 Defendant's Counterstatement ¶¶ 110-112; NYSCEF 169, Plaintiffs' Response ¶¶ 110-112; NYSCEF 137, Consent Order and Consent to Order of Receivership.) The Consent Order placed WIC under administrative supervision of the Florida Office of Insurance Regulation (FLOIR) for a

652767/2020 ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No. 004

Page 6 of 20

period of 120 days, during which time WIC had to satisfy the conditions of a corrective plan. (NYSCEF 137, Consent Order ¶¶ 3-4, 6.) The Consent Order states that, should WIC fail to comply with any of its provisions, WIC "consent[ed] to the entry of an Order appointing the [Florida Department of Financial Services ('DFS')] as Receiver and acknowledge[d] that [DFS] [could] apply to the Court for an Order of Rehabilitation or Liquidation, at the sole discretion of [DFS]." (*Id.* ¶ 16). "In the event that [DFS] initially obtained an [Order of Rehabilitation], [WIC] further consent[ed] to [DFS] obtaining a subsequent [Order of Liquidation] . . . at any time and in its sole discretion." (*Id.*)

In the Consent to Order of Receivership, "[WIC] admitted that grounds existed for the appointment of a Receiver" and that its board consented to "the entry of an Order of Rehabilitation or Liquidation, at the sole discretion of [DFS]." (*Id.*, Consent to Order of Receivership at 13/32 ¶¶ 2, 3). Annexed as "attachment A" to the Consent to Order of Receivership, the resolution of WIC's board of directors, dated November 15, 2019, provided unanimous consent to the entry of an Order of Rehabilitation or Liquidation at the discretion of DFS. (*Id.*, Board Resolution at 16/32.)

On November 18, 2019, Midtown sent notices of default to Whited at Whited and Sons LLC and Greenlight, stating that four separate events of default occurred under the Credit Agreement. (NYSCEF 166 Defendant's Counterstatement ¶ 114; NYSCEF 169, Plaintiffs' Response ¶ 114; NYSCEF 135, 136, Notices of Default.)

On November 22, 2019, Whited stepped down as CEO of the Windhaven Entities and was replaced by Greg Hoeg of Alvarez & Marsal (A&M), a management consulting firm, who was appointed Chief Restructuring Officer of Windhaven. (NYSCEF 166 Defendant's Counterstatement ¶ 115; NYSCEF 169, Plaintiffs' Response ¶ 115.)

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No. 004

Page 7 of 20

7 of 20

The parties dispute who was in control of the Windhaven Entities after this point. Plaintiffs claim that Whited, on behalf of "Whited & Sons, LLC and its subsidiaries and affiliates and assigns and successors," executed the engagement letter with A&M (*see* NYSCEF 139, Engagement Letter at 1) and that, as the sole shareholder, Whited retained control over the Windhaven Entities (*see* NYSCEF 98, tr at 367:4 -368:20 [Spiro[4] Depo]; *see also* NYSCEF 142, WIC Board Meeting Minutes [December 4, 2019] [indicating Whited was chairman of the board].)  Whited, on the other hand, claims that the Windhaven Entities engaged A&M to comply with Atalaya's demands following default under the Credit Agreement and that Hoeg exercised managerial control over the Windhaven Entities, including WIC and WNIC.  (NYSCEF 160, tr at 250:19-251:2, 495:4-6 [Whited Depo].)  Notably, it does appear that A&M was hired at Atalaya's behest.  (*See* NYSCEF 166 Defendant's Counterstatement ¶ 96; NYSCEF 169, Plaintiffs' Response ¶ 96; *see also* NYSCEF 164, Atalaya's Internal Presentation on Windhaven at 12/14 [stating that, "(u)pon and Event of Default, Atalaya has the right to appoint a restructuring advisor to help protect value" and that A&M "has been identified and can be parachuted in on short notice"]; NYSCEF 125, Ambina's Investment Memorandum at ATALAYA00058640 [noting that, "in a downside case (for the Loan) Atalaya has the right to appoint a restructuring advisor to help protect value" and that "Atalaya anticipates hiring (A&M)"].)

Atalaya had liens on the Windhaven Entities' assets and declined to permit these assets to be used to support WIC.  (NYSCEF 166 Defendant's Counterstatement ¶ 117;

---

[4] Matt Spiro is Atalaya's corporate representative. (NYSCEF 98, tr at 4:3-5 [Spiro Depo].)

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 8 of 20**

NYSCEF 169, Plaintiffs' Response ¶ 117; NYSCEF 140, Letter from Whited to FLOIR [November 25, 2019] at ATALAYA00034793.)

On December 4, 2019, WIC's board of directors held a meeting, attended by Sarnobat and another Atalaya representative. (NYSCEF 166 Defendant's Counterstatement ¶ 119; NYSCEF 169, Plaintiffs' Response ¶ 119.) Among the issues discussed was FLOIR's request to proceed with WIC's liquidation. (NYSCEF 142, WIC Board Meeting Minutes [December 4, 2019].) "Hoeg told the board he believed liquidation was inevitable based on the feedback he received from the [FLOIR] supervisor so best consent." (NYSCEF 166 Defendant's Counterstatement ¶ 120; NYSCEF 169, Plaintiffs' Response ¶ 120; NYSCEF 142, WIC Board Meeting Minutes [December 4, 2019].)[5] The board unanimously passed a motion authorizing Whited "to sign a consent order regarding liquidation of [WIC] after Greenlight . . . and Atalaya . . . approved." (NYSCEF 142, WIC Board Meeting Minutes [December 4, 2019].) On December 6, 2019, during another meeting of WIC's board, Hoeg "relayed that there had been no formal approval from Atalaya Capital on consent for liquidation, but it was Atalaya's position that their approval isn't necessary." (NYSCEF 166 Defendant's Counterstatement ¶ 121; NYSCEF 169, Plaintiffs' Response ¶ 121; NYSCEF 144, WIC Board Meeting Minutes [December 6, 2019] at 1.)

On December 12, 2019, upon the petition of DFS, a Florida state court issued an order appointing DFS as receiver of WIC for purposes of rehabilitation (NYSCEF 145, Amended Consent Order.) On December 30, 2019, upon DFS's motion for an order to

---

[5] It is unclear why this additional consent was requested, considering the consents Whited executed on November 15, 2019.

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No. 004

Page 9 of 20

9 of 20

liquidate WIC, the Florida court appointed DFS as receiver of WIC for purposes of liquidation, effective January 6, 2020. (NYSCEF 147, Consent Order Appointing DFS as Receiver.)

On January 16, 2020, the Texas Department of Insurance issued a confidential order of supervision to WNIC. (NYSCEF 166 Defendant's Counterstatement ¶ 130; NYSCEF 169, Plaintiffs' Response ¶ 130.) On February 21, 2020, the State of Texas filed a petition for an order appointing a liquidator and requesting injunctive relief against WNIC. (*Id.* ¶ 134; NYSCEF 91, Petition.) On March 5, 2020, a Texas state court entered an order appointing a liquidator and issuing a permanent injunction and notice of automatic stay against WNIC. (NYSCEF 166 Defendant's Counterstatement ¶ 137; NYSCEF 169, Plaintiffs' Response ¶ 137; NYSCEF 90, Appointment and PI Order.)

**Discussion**

Plaintiffs contend that they are entitled to summary judgment for breach of the Validity Guaranty, because the following Trigger Events occurred under the Voluntary Bankruptcy Provision: (1) WIC's consent to administrative supervision and subsequent liquidation (Florida Liquidation) satisfies the "Loan Party or any Subsidiary thereof commences a voluntary case or other proceeding involving its liquidation . . . or seeking the appointment of receiver" trigger (Voluntary Proceeding Trigger); (2) WNIC's liquidation (Texas Liquidation) satisfies the "any Loan Party or any Subsidiary thereof . . . any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceeding commenced against it" trigger (Involuntary Proceeding Trigger); and (3) the failure to pay Greenlight satisfies the "Loan Party or any Subsidiary thereof . . . shall fail generally . . . to pay its debts as they become due"

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 10 of 20**

10 of 20

trigger (General Failure to Pay Debts Trigger). (NYSCEF 84, Validity Guaranty at 4 [§ 1 (b) (viii)].)

As concerns the Involuntary Proceeding Trigger, plaintiffs concede that "the wording is awkward" (NYSCEF 170, Memo in Support at 23/26) and suggest that "[t]he word 'to' appears to have been substituted for the word 'seeking' just before the words 'the appointment of,'" such that the corrected clause would read, "any such relief or seeking the appointment of . . ." (*Id.* at n 11.) They, nonetheless, contend that there is no ambiguity, because "the language is susceptible to only one reasonable interpretation: that the parties intended that an involuntary bankruptcy filing, like the Texas Liquidation, would be a Trigger Event." (*Id.* at 23.)

Whited counters that the Validity Guaranty is a bad actor guaranty rather than an absolute guaranty against default under the Credit Agreement and that, as such, the parties intentionally omitted involuntary proceedings brought by an insurance regulator from the Trigger Events. He argues that if the parties intended to protect against involuntary bankruptcies and similar occurrences, the language of the Voluntary Bankruptcy Provision would mirror that of the contemporaneously executed Credit Agreement, which expressly includes such occurrences under Events of Default. Instead, he argues, the parties made a conscious choice to exclude that language, opting to use language that protected Atalaya from Whited's intentional bad acts. Therefore, neither the Florida nor the Texas Liquidation, which were involuntary and commenced by operation of state law, constitutes a Trigger Event. At the very least, Whited argues, the language is ambiguous, and the parties' intentions constitute an issue of fact. He also argues that, because Atalaya effectively controlled Windhaven

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 11 of 20**

from November 22, 2019, it should be estopped from denying its role in the events that led up to the Florida and Texas Liquidations.

Lastly, he asserts that the failure to pay Greenlight is not a Trigger Event. Whited contends the "shall fail generally . . . to pay its debts as they become due" language (NYSCEF 84, Validity Guaranty at 4 [§ 1 (b) (viii)]), "which echoes definitions of insolvency in the Bankruptcy Code and the [New York Debtor and Creditor Law ("DCL"), unambiguously restricts Whited or Windhaven from intentionally bringing about insolvency proceedings by indirect means" and is not intended "to force Whited to personally guarantee the solvency of his distressed business." (NYSCEF 165, Memo in Opp at 25-26/29.) Moreover, he argues, liability cannot be triggered by debts embodied in the underlying loan agreements, i.e., Atalaya was aware of Windhaven's liability to Greenlight, and this was the subject of a simultaneously executed intercreditor agreement.

Pursuant to CPLR 3212, to obtain summary judgment, the movant "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986].) "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." (*Id.*) Once the movant satisfies its burden, the opposing party must "produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." (*Id.*)

A cause of action for breach of contract requires a plaintiff to demonstrate "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No.  004

Page 12 of 20

12 of 20

thereof, and resulting damages." (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010] [citation omitted].) "A contract of guaranty is subject to the fulfillment of any condition precedent to the liability imposed on the guarantor." (*Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC*, 30 AD3d 1, 10 [1st Dept 2006], *affd* 8 NY3d 59 [2006] [internal citations omitted].) Because "a bad [actor] guarantee is triggered when one of the enumerated bad acts occurs" (*Nexbank, SSB v Soffer*, 2014 NY Slip Op 31433[U], *3 [Sup Ct, NY County 2014], *affd* 129 AD3d 485 [1st Dept 2015]), on summary judgment, the plaintiff bears the burden of demonstrating that such a condition precedent was satisfied. (*See Madison Ave. Leasehold, LLC*, 30 AD3d at 10-11.)

"Whether or not a writing is ambiguous is a question of law to be resolved by the courts." (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990] [citation omitted].) "[A] contract is ambiguous when read as a whole, [it] fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." (*Georgia Malone & Co., Inc. v E & M Assoc.*, 163 AD3d 176, 185 [1st Dept 2018] [internal quotation marks and citations omitted].)

"[T]he best evidence of what parties to a written agreement intend is what they say in their writing." (*Banco Espírito Santo, S.A. v Concessionária Do Rodoanel Oeste S.A.*, 100 AD3d 100, 106 [1st Dept 2012] [internal quotation marks and citation omitted].) "[A]greements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one." (*1471 Second Corp. v NAT of NY Corp.*, 162 AD3d 449, 450 [1st Dept 2018] [internal quotation marks and citations omitted].) The writing must be read

**652767/2020 ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No. 004**

**Page 13 of 20**

as a whole, as its "meaning . . . may be distorted where undue force is given to single words or phrases." (*Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003] [internal quotation marks and citation omitted].) "[C]ourts must construe contracts in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." (*Western & S. Life Ins. Co. v U.S. Bank N.A.*, 209 AD3d 6, 13 [1st Dept 2022] [internal quotation marks and citations omitted].)

Here, plaintiffs fail to demonstrate their prima facie entitlement to summary judgment. First, they fail to demonstrate that the Florida Liquidation satisfies the Voluntary Proceeding Trigger. Under this trigger, the guarantor is liable when "any Loan Party or any Subsidiary thereof commences a voluntary case or other proceeding involving its liquidation . . . or seeking the appointment of a . . . receiver." (NYSCEF 84, Validity Guaranty at 4 [§ 1 (b) (viii)]). The triggering event is "any Loan Party or any Subsidiary . . . commenc[ing] a voluntary case or other proceeding." (*Id.*) The language that follows, set off by "involving its" and "or seeking the appointment of," merely describes the "voluntary case or other proceeding." (*Id.*) Plaintiffs fail to demonstrate that WIC commenced any action or proceeding for its liquidation.

The November 15, 2019 Consent Order for Administrative Supervision placed WIC in administrative supervision for 120 days. (*See* NYSCEF 137, exhibit A at 18/32). To the extent that plaintiffs contend that FLOIR's administrative supervision constitutes a case or a proceeding involving WIC's liquidation (*see* NYSCEF 183, oral arguments tr at 5:10 - 6:13), they offer nothing in support of this proposition. The consent order itself indicates that the supervision was not an administrative proceeding (*see* NYSCEF Doc

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 14 of 20**

14 of 20

No. 137, exhibit A, ¶ 19) and that WIC's compliance with FLOIR's corrective plan could have avoided receivership for purposes of rehabilitation or liquidation. (S*ee id*, ¶¶ 6, 16.)

As for the subsequent court orders, neither was initiated by WIC. On December 12, 2019, upon the *petition of DFS*, a Florida court appointed DFS as receiver of WIC for purposes of rehabilitation. (NYCEF 145, Petition.) On December 30, 2019, upon *DFS's motion*, the court appointed DFS as receiver of WIC for purposes of liquidation (NYSCEF 147, Motion.) DFS commenced the proceeding and WIC was the "respondent" (*see* NYCEF 145, 147.) That WIC consented to the Florida Liquidation is immaterial and plaintiffs mistakenly focus on this conduct being voluntary. (S*ee* NYSCEF 170, Plaintiffs' MOL in support, at 6/26 n 3.) The plain language of the Voluntary Proceeding Trigger requires that WIC be the one to "commence[] a voluntary case or other proceeding." As this did not occur, plaintiffs fail to demonstrate that the Florida Liquidation constitutes a Trigger Event.[6]

---

[6] Notably, if the intention of the parties was for the Involuntary Proceeding Trigger to mirror similar language found in the Credit Agreement (*see* NYSCEF 83, Credit Agreement at 7, 2 [defining "Event of Default" and "Bankruptcy Event"]), it would read:

> "any Loan Party or any Subsidiary thereof commences a voluntary case or other proceeding involving its liquidation . . . or seeking the appointment of a . . . receiver . . . , [or consents to] any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceeding commenced against it (an 'Involuntary Proceeding')."

Under such a provision, the Florida Liquidation would be a Trigger Event. However, plaintiffs do not make this argument. In fact, they insist that the Validity Guaranty should not be read in this way. (S*ee* NYSCEF 183, oral arguments tr at 37:8 – 38:13). Indeed, as will be discussed shortly, they argue that the Involuntary Proceeding Trigger means something different.

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No.  004

Page 15 of 20

Second, plaintiffs fail to demonstrate that the Texas Liquidation satisfies the Involuntary Proceeding Trigger. Plaintiffs' contention, that the only reasonable interpretation is that the parties intended an involuntary bankruptcy to be a Trigger Event, is untenable. While the language of this clause is unclear, due to one or more missing words, when the Voluntary Bankruptcy Provision is read as a whole, it does not entirely fail to disclose the parties' intent. Rather, when the provision is read as a while, it could not have been the intention of the parties that an involuntary proceeding, without more, be a Trigger Event. A contrary interpretation would render the last clause of the Voluntary Bankruptcy Provision—defining a Trigger Event to include "the Guarantor or any Company Party . . . intentionally collud[ing] with any third party in to effect the filing or petition of an Involuntary Proceeding against a Loan Party or Subsidiary thereof"— superfluous. Such an interpretation must be avoided. (See *Western & S. Life Ins. Co.*, 209 AD3d at 13; *see also Georgia Malone & Co., Inc.*, 163 AD3d at 187)

Further, a review of the Credit Agreement makes clear that the parties intentionally omitted an involuntary proceeding as a Trigger Event. The Credit Agreement was executed at the same time and addresses the same subject matter as the Validity Guaranty. Hence, the two must be read together. (*See 1471 Second Corp.*, 162 AD3d at 450 [reading a guaranty and the related lease together].) The Credit Agreement uses language nearly identical to that of the Voluntary Bankruptcy Provision in defining what constitutes an Event of Default. The two provisions track each other, nearly word for word, until the final clause, where they diverge drastically. The Credit Agreement treats the commencement of an involuntary proceeding against the borrower or the appointment of a receiver over its property as an Event of Default, whereas the

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 16 of 20**

16 of 20

Validity Guaranty requires the Guarantor to collude in the commencement of an involuntary proceeding against a Loan Party or its Subsidiary for it to constitute a Trigger Event. (*Compare* NYSCEF 83, Credit Agreement at 7, 2 [defining "Event of Default" and "Bankruptcy Event"], *with* NYSCEF 84, Validity Guaranty § 1 [b] [viii].) "Even where there is ambiguity, if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission." (*Quadrant Structured Prods. Co., Ltd. v Vertin*, 23 NY3d 549, 560 [2014].) Here, the inescapable conclusion is that the parties intended for an involuntary proceeding to be an Event of Default under the Credit Agreement, but not a Trigger Event under the Validity Guaranty. Whatever else the parties intended by the Involuntary Proceeding Trigger, they did not intend for an involuntary proceeding, without more, to constitute a Trigger Event. To the extent that plaintiffs point to deposition testimony in support of their interpretation. (*See* NYSCEF 170, Plaintiffs' MOL in Support, at 11-12, 20), because the language of the agreement is clear on this point, the court may not consider testimony that reveals a contrary intention. (*See Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 66 [1st Dept 2008], ["(p)arol evidence cannot be used to create an ambiguity where the words of the parties' agreement are otherwise clear and unambiguous"], *affd* 13 NY3d 398 [2009].)

For the foregoing reasons, the Texas Liquidation, which plaintiffs concede was "an involuntary bankruptcy filing." (*See* NYSCEF 170, Plaintiffs' MOL in Supoort at 19), is not a Trigger Event under the Validity Guaranty.

Finally, plaintiffs fail to demonstrate, prima facie, that Windhaven's debt to Greenlight satisfies "General Failure to Pay Debts Trigger." "'[G]enerally' imports

**652767/2020  ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No. 004**

**Page 17 of 20**

[* 17]

17 of 20

something that involves or is applicable to the 'whole' and with regard to the overall picture, as opposed to specific instances." (*Matter of B. D. Intl. Discount Corp.*, 15 BR 755, 762 [Bankr SD NY 1981], *affd* 24 BR 876 [SD NY 1982], *affd* 701 F2d 1071 [2d Cir 1983] [discussing cases interpreting 11 USC 303 (h) (1)], *cert denied* 464 US 830); *see also* Merriam-Webster.com Dictionary, generally [https://www. merriam-webster.com/dictionary/generally] [defining "generally" as "in a general manner" and "in disregard of specific instances and with regard to an overall picture"].) As such, when bankruptcy courts determine whether a "debtor is generally not paying such debtor's debts as such debts become due" (11 USC 303 [h] [1]), they consider: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct of its financial affairs." (*Matter of A & J Quality Diamonds, Inc.*, 377 BR 460, 463 [Bankr SD NY 2007] [internal quotation marks and citations omitted]; *see also Matter of Manolo Blahnik USA, Ltd.*, 619 BR 81, 99 [Bankr SD NY 2020].) Additionally, "[t]he failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts if the creditor represents a significant amount of the total debt." (*Matter of A & J Quality Diamonds, Inc.*, 377 BR at 464 [internal citations omitted]; *see also Matter of Manolo Blahnik USA, Ltd.*, 619 BR at 99.) Here, plaintiffs point to Greenlight's demand for payment, without any evidence of Windhaven's overall financial condition or what portion of Windhaven's overall debt was represented by the commissions owed to Greenlight. Therefore, plaintiffs fail to demonstrate, prima facie, that there has been a general failure to pay debts as they come due. (*See Matter of A & J Quality Diamonds, Inc.*, 377 BR at 464 [finding that the petitioner failed to demonstrate that the debtor was generally not paying its debts as

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No. 004

Page 18 of 20

they became due in the "the absence of proof about the number and amount of other creditors' claims, and the Debtor's overall conduct of its financial affairs"].)

Plaintiffs' argument, that bankruptcy cases interpreting the Bankruptcy Code are unrelated to the Voluntary Bankruptcy Provision and do not provide guidance in interpreting the contractual language at issue in this case. (*See* NYSCEF 168, Plaintiffs' Reply MOL, at 11; NYSCEF 183, oral arguments tr at 10:5-17), is disingenuous. "Besides the common meaning of the language employed, the expectations and purposes of the parties in view of the factual context in which the agreement was made must be considered in interpreting a contract term, with due regard to the parties' sophistication." (*Madison Ave. Leasehold, LLC*, 30 AD3d at 8 [internal citations omitted].) Furthermore, "[w]hile words are generally assigned their ordinary meaning, where a word has attained the status of a term of art and is used in a technical context . . . , the technical meaning is preferred over the common or ordinary meaning" (*id.* [internal citation omitted].) Here, the Validity Agreement was drafted by attorneys, the provision in question was expressly concerned with relief available to Windhaven under "any Debtor Relief Law" (NYSCEF 84, Validity Agreement § 1 [b] [viii]), and the parties chose to employ a phrase common to such laws. (*See e.g.* 11 USC 303 [h] [1]; DCL § 271 [b] [providing that "(a) debtor that is generally not paying the debtor's debts as they become due . . . is presumed to be insolvent"].) Bearing in mind the sophistication of the parties and the context, consideration of bankruptcy cases interpreting similar language in the Bankruptcy Code is appropriate.

For the foregoing reasons, to the extent that plaintiffs seek summary judgment on their first cause of action for breach of contract, the motion is denied.

**652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC**
**Motion No.  004**

**Page 19 of 20**

To the extent that plaintiffs seek summary judgment on their second cause of action for declaratory judgment, they have made no showing of entitlement to such relief. Their memorandum of law in support of the motion briefly mentions that Whited agreed to provide "on-demand payment of any out-of-pocket costs, including reasonable attorneys' fees and expenses, arising from the enforcement of rights under the Validity Guaranty." (NYSCEF 170, Plaintiffs' MOL in Support at 3.) This occurs in the memorandum's facts section and no further reference is made to this claim, not even in the concluding request for relief, which is limited to the breach of contract claim. (*see id.* at 22.) Therefore, plaintiffs have failed to demonstrate, prima facie, their entitlement to this relief and denial is appropriate. (*See Alvarez,* 68 NY2d at 324.)

Accordingly, it is

ORDERED that the motion by plaintiffs, Atalaya Special Opportunities Fund VII LP and Midtown Madison Management LLC, for summary judgment is denied; and it is further

ORDERED that parties may file motions in limine by February 29, 2024. Otherwise waived. If the parties fail to file motions in limine, they shall appear for a trial scheduling conference on March 4, 2024 at 4 pm.

20231231151110AMASLEYCBAD15364B794EF4BF2D7742750A1EA3

_____
**12/31/2023**
**DATE**

_____
**ANDREA MASLEY, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652767/2020   ATALAYA SPECIAL vs. WHITED, JIMMY ERIC
Motion No.  004

Page 20 of 20